904 F.2d 505
 FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, a
corporation,* Plaintiff-Appellant,
v.
David L. BUTLER, Defendant-Appellant,
and
Miles A. Cobb; James Grauer; Bryant J. Brooks, Jr.; Fred
F. Enemark; E. Tim Ching; John Y. Chiang; Joseph L.
Loetterle; Cynthia Murphy; William Nagel; Michael A.
Heren; and Richard A. Bryant, Defendants-Appellees.
 Nos. 88-15600, 88-15601.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 13, 1989.
Decided May 31, 1990.
 
 Eugene J. Comey, Tuttle & Taylor, Daniel Johnson, Jr., and William S. Freeman, Cooley Godward Castro Huddleson & Tatum, Washington, D.C., for plaintiff-appellant.
 William M. Goodman, Topel & Goodman, San Francisco, Cal., for defendant-appellant Butler.
 Gary S. Anderson, Farella, Braun & Martel, San Francisco, Cal., for defendant-appellee Cobb.
 Barry D. Hovis, Adams, Sadler & Hovis, San Francisco, Cal., for defendant-appellee Grauer.
 Nance F. Becker, Rogers, Joseph, O'Donnell & Quinn, San Francisco, Cal., for defendant-appellee Ching.
 James A. Lassart, Ropers, Majeski, Kohn, Bentley, Wagner & Kane, San Francisco, Cal., for defendant-appellee Chiang.
 Karl Olson, Cooper, White & Cooper, San Francisco, Cal., for defendant-appellee Loetterle.
 Susan Raffanti, Law Offices of Paul Delano Wolf, Oakland, Cal., for defendant-appellee Murphy.
 David M. Blicker, Sacramento, Cal., for defendant-appellee Nagel.
 Paul J. Dion, Feldman, Waldman & Kline, San Francisco, Cal., for defendants-appellees Heren and Bryant.
 Jonathan Bass, Coblentz, Cahan, McCabe & Breyer, San Francisco, Cal., for defendant-appellee Brooks.
 Appeal from the United States District Court for the Northern District of California.
 Before WRIGHT, HUG, and LEAVY, Circuit Judges.
 HUG, Circuit Judge:
 
 
 1
 This interlocutory appeal under 28 U.S.C. Sec. 1292(b) (1988) concerns an action by the Federal Savings and Loan Insurance Corporation ("FSLIC") against officers and directors of Bell Savings and Loan Association ("Bell Savings"), alleging that they wrongfully caused Bell Savings to lose millions of dollars as a result of reckless and speculative lending, fraudulent transactions, and self-dealing. FSLIC entered into a settlement agreement with one defendant, David Butler ("Butler"). The agreement specified that it was to be governed and construed under the laws of California. FSLIC and Butler moved to confirm the settlement as being in good faith under applicable California statutes. The effect of the statutes is to establish the amount to be set off against the claims of nonsettling defendants and to bar contribution and indemnity claims by them against Butler. The district court ruled that the settlement was in good faith and that under the terms of the settlement agreement the claims against the nonsettling defendants are to be reduced by $165.5 million. FSLIC contends that the district court misinterpreted California law and that the setoff should only be $8.4 million.
 
 
 2
 The issue specified by FSLIC in its section 1292(b) petition to this court was that the district court erred in construing California law concerning the effect of the settlement agreement. For the first time on appeal, FSLIC contends in its opening brief that federal common law should apply in construing the effect of the settlement agreement and that the district court erred in not applying it.
 
 
 3
 We hold that California law applies in this case, but that the district court erred in applying it. We therefore reverse and remand.
 
 I.
 
 4
 This action was initially brought by Bell Savings after a regular examination revealed evidence that Butler, Bell Savings' board chairman and largest shareholder, had profited from undisclosed self-dealing transactions involving Bell Savings. Butler's resignation was demanded, further investigation ensued, and this action was instituted.
 
 
 5
 In July, 1985, the Federal Home Loan Bank Board ("FHLBB") placed Bell Savings, a California state-chartered, federally insured thrift institution, in receivership pursuant to 12 U.S.C. Sec. 1729(c)(1) (1988) (repealed 1989). FHLBB then appointed FSLIC as receiver, which immediately assigned the claims asserted in this action to FSLIC in its corporate capacity.
 
 
 6
 FSLIC substituted itself for Bell Savings as plaintiff, and filed a Second Amended Complaint against 33 defendants, alleging that certain officers, directors, borrowers, and others wrongfully caused Bell Savings to incur millions of dollars of damages as a result of reckless and speculative lending, fraudulent transactions, and self-dealing. Specifically, the complaint asserts 46 state law counts (including fraud, conspiracy to defraud, breach of fiduciary duty, breach of indemnity agreement, fraudulent conversion, negligence, and unjust enrichment and constructive trust) and one federal law count (for violations of the Racketeer Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. Secs. 1962(a)-(d) (1988)).
 
 
 7
 On February 16, 1987, Butler, the only person named in all 47 counts of FSLIC's complaint, entered into a settlement agreement with FSLIC. In this agreement, Butler admitted defrauding Bell Savings in connection with five transactions and breaching his fiduciary duties in connection with more than 50 other loan transactions. FSLIC and Butler stipulated that Butler was obligated to pay damages of $165.5 million. According to FSLIC, the $165.5 million figure was based on the actual losses of over $220 million incurred by Bell Savings as a result of the more than 50 loan transactions in which Butler and the other director and officer defendants were involved, discounted by a factor representing litigation risk.
 
 
 8
 Under the terms of the settlement agreement, Butler agreed to transfer to FSLIC all his stock in Bell National Corporation, the bankrupt parent of Bell Savings, and $290,000 in cash. He also agreed to cooperate with FSLIC in prosecuting its claims against the remaining defendants. Finally, Butler agreed to assign 90% of his rights to the proceeds of specified insurance policies, and all of his rights to pursue claims for breach of the covenant of good faith and fair dealing by the insurance carrier.[1] The directors' and officers' liability insurance issued to Bell Savings contained a limit of liability equal to $10 million for each loss and a $10 million aggregate limit of liability each policy year for each director and officer. Butler made a demand on the insurance carrier to accept an offer by FSLIC to settle its claims against Butler for his policy limits of $10 million, less defense costs. The insurance carrier rejected the offer. It contended that $10 million was the total coverage existing for all officers and directors in all of the transactions.
 
 
 9
 FSLIC placed considerable significance on the value of the insurance claim. It contended that under the language of the policy and California insurance law, the carrier could be liable for more than the policy limits for a bad faith refusal to settle. Thus, FSLIC contended that Butler's acknowledgement of liability for $165.5 million and the refusal to settle within policy limits could result in the insurance carrier's obligation to cover this entire amount.
 
 
 10
 At the time of the settlement agreement, there were alternate methods by which an injured party could proceed against the carrier of the insured tortfeasor for bad faith refusal to settle. One alternative was a direct action under Cal.Ins.Code Sec. 790.03 (West Supp.1990), which had been held to be authorized under Royal Globe Ins. Co. v. Superior Court, 23 Cal.3d 880, 153 Cal.Rptr. 842, 592 P.2d 329 (Cal.1979). The second alternative was to bring an action against the insurance carrier as the assignee of the insured. In either case, it was essential that the liability of the insured first be determined before the action was brought. A judgment after a trial on the claim of the injured party against the insured obviously would be such a determination of liability. There also was case authority, however, that an admission of liability by the insured was adequate to meet the determination of liability requirement. See Heninger v. Foremost Ins. Co., 175 Cal.App.3d 830, 833, 221 Cal.Rptr. 303, 305 (Cal.Ct.App.1985); Rodriguez v. Fireman's Fund Ins. Co., Inc., 142 Cal.App.3d 46, 53, 190 Cal.Rptr. 705, 709 (Cal.Ct.App.1983). FSLIC states that the purpose for requiring Butler's admission of liability for $165.5 million was to meet the foundational requirement of "a determination of liability."[2]
 
 
 11
 One of the provisions of the settlement agreement expressly stipulated that California law would govern the terms of the agreement. In March, 1988, Butler filed a motion, which was joined by FSLIC, for the court to determine that the settlement was made in good faith pursuant to Cal.Civ.Proc.Code Secs. 877, 877.6 (West Supp.1990). The settling parties requested that Butler's consideration under the agreement be valued at $8.4 million and the setoff be in that amount.[3] Several of the nonsettling defendants filed a cross-motion to set off their pending claims by $165.5 million, the amount of Butler's admitted liability stipulated in the agreement.
 
 
 12
 Applying California law, the district court ruled that the settlement did not qualify for good faith approval if the setoff was $8.4 million because that amount was disproportionately low as compared to Butler's proportionate share of liability. The trial court granted the nonsettling defendants' cross-motion, holding that the nonsettling defendants were entitled to a $165.5 million setoff against their potential liability to FSLIC. In granting this motion, the court also found the agreement, as thus interpreted, to be made in good faith. The court then certified the order for interlocutory appeal under 28 U.S.C. Sec. 1292(b) (1988). FSLIC and Butler both appealed, and we permitted the interlocutory appeal.[4]
 
 
 13
 FSLIC argues on appeal that this court should adopt a federal common law settlement bar rule for FSLIC litigation, or, in the alternative, that the district court erred in applying California law by setting off the nonsettling defendants' claims by $165.5 million. The nonsettling defendants, on the other hand, argue that FSLIC has waived its federal common law argument, and that the district court correctly applied the setoff provision under California law.
 
 II.
 
 14
 The contention that federal common law should apply comes far too late. The agreement entered into by FSLIC provided that California law should apply. FSLIC joined the motion for confirmation of the good faith of the settlement under the provision of California law. The nonsettling defendants filed a counter-motion based on the application of California law. The district court held a hearing applying California law. FSLIC's petition to appeal, under 28 U.S.C. Sec. 1292(b), was based solely on the contention that the district court had misinterpreted California law. Now, for the first time in its opening brief on appeal, FSLIC asks us to adopt a federal common law standard to determine the effect of the settlement agreement. As a general rule, an appellate court will not consider arguments which were not first raised before the district court, absent a showing of exceptional circumstances. Villar v. Crowley Maritime Corp., 782 F.2d 1478, 1483 (9th Cir.1986). In light of the FSLIC's actions in providing in the agreement that California law governs, in asserting before the district court that California law controls, in requiring the district court to hold hearings on that basis, and, further, in light of having caused the nonsettling defendants to expend the time and effort in participating in the hearings relying on California law, this case hardly seems the exception to depart from our rule and consider this untimely argument. We decline to do so and, therefore, restrict our consideration to California law.
 
 III.
 
 15
 Section 877 of the California Civil Procedure Code provides in pertinent part as follows:
 
 
 16
 Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect:
 
 
 17
 (a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater.
 
 
 18
 (b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties.
 
 
 19
 Cal.Civ.Proc.Code Sec. 877 (West Supp.1990) (emphasis added). Butler and FSLIC contended that the value of the consideration, the cash, the stock, Butler's cooperation with FSLIC in the prosecution of its claims, and the insurance claim, was $8.4 million, and that under the provisions of section 877(a) the claims against the other defendants should be reduced by the $8.4 million. The district judge held that, as thus construed, the settlement would not be in good faith within the meaning of section 877. However, the court considered Butler's stipulation to the amount of his liability to FSLIC, $165.5 million, to be "the amount stipulated," specified in section 877(a), and thus the amount of the setoff. As thus construed, the district court found the settlement to be in good faith.
 
 
 20
 The Settlement Agreement p 6, stipulating to Butler's liability, provided:
 
 
 21
 FSLIC and Butler stipulate and agree that Butler is obligated to pay damages to FSLIC and against Butler in the sum of One Hundred Sixty-Five Million, Five Hundred Thousand Dollars ($165,500,000.00).
 
 
 22
 We must decide whether the district court erred in construing the language of this provision of the agreement to be equivalent to "the stipulated amount" for which section 877(a) requires a setoff. Specifically, does the amount stipulated for Butler's liability in the agreement constitute "the amount stipulated by the release," or do these statutory terms refer to a stipulation that expressly designates the amount by which the claims against the other creditors are to be reduced?
 
 
 23
 As we have concluded, the settlement agreement is governed by California law. Whether the district court properly construed state law is a question we review de novo. In re McLinn, 739 F.2d 1395, 1403 (9th Cir.1984) (en banc). No California or Ninth Circuit case has confronted the statutory construction question that is before us here. When addressing an issue that has not been met by the California Supreme Court, we must apply the rule we believe that court would adopt were it confronted with the same situation. Commercial Union Ins. Co. v. Ford Motor Co., 640 F.2d 210, 212 (9th Cir.) (construing Cal.Civ.Proc.Code Sec. 877), cert. denied, 454 U.S. 858, 102 S.Ct. 310, 70 L.Ed.2d 154 (1981). After a review of California's settlement bar statute, we apply settled principles of statutory construction under California law in order to resolve the question presented.
 
 A.
 
 24
 In a sense there are really three objectives to be achieved by the law regarding settlements with one among several joint tortfeasors:
 
 
 25
 (1) full recovery by the plaintiff for the damages suffered;
 
 
 26
 (2) equitable sharing of the damages among the parties at fault; and
 
 
 27
 (3) encouragement of settlements.
 
 
 28
 Under the common law rule, the first objective was served because the plaintiff had complete freedom to collect the damages from any one or all of the defendants in whatever proportion he chose. The second objective was ill-served because one defendant could be forced to pay the full amount without any right of contribution from the others. The third objective was also ill-served because a settlement against one defendant relieved all others.[5]
 
 
 29
 One solution to promote settlement was embodied in the 1939 version of the Uniform Contribution Among Joint Tortfeasors Act. This provided that a release of one joint tortfeasor did not release the others but "reduce[d] the claim against the other tortfeasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid." Uniform Contribution Among Tortfeasors Act of 1939, Sec. 4, reprinted in 12 U.L.A. 57-58 (West 1975). It also preserved the right of contribution among all tortfeasors. This achieved the first objective because the plaintiff could settle with one defendant and still assert his full claim against the others and collect from all or any of them. It achieved the second objective because the right of contribution among joint tortfeasors was preserved. It did not, however, achieve the third objective of the retained right of contribution because there was a reluctance of a defendant to settle and still remain potentially liable to share in a judgment from a trial in which he would not be able to participate. The tendency was for a settling defendant to utilize the agreed amount of setoff provision of the statute to provide for as high a setoff as possible and, thus, avoid potential liability from a contribution suit by the other tortfeasors.
 
 
 30
 A second solution advocated to eliminate this deficiency was to provide that the right of contribution against the settling defendant would be discharged by the settlement. This solves the deterrent-to-settlement problem but militates against the second objective, the equitable sharing of the damages by all tortfeasors. It left open the opportunity for a collusive settlement between the plaintiff and the defendant, to the detriment of the nonsettling defendants. This led to a requirement that such a settlement must be made "in good faith." That is the approach adopted by the 1955 version of the Uniform Contribution Among Tortfeasors Act, which provides:
 
 
 31
 Sec. 4. [Release or Covenant Not to Sue]
 
 
 32
 When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:
 
 
 33
 (a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and,
 
 
 34
 (b) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.
 
 
 35
 Uniform Contribution Among Tortfeasors Act of 1955, Sec. 4, reprinted in 12 U.L.A. 98 (West 1975) & Handbook of the Nat'l Conference of Commissioners on Uniform State Laws & Proceedings of the Annual Conference Meeting in its 64th Year, 218, 223 (Aug. 15-20, 1955) (emphasis added). The major change between the 1939 version and the 1955 version is that it eliminated the exposure of the settling defendant to potential liability for contribution to the other tortfeasors, thus, encouraging settlement. The requirement of good faith was added to avoid the potential for collusion between the plaintiff and the settling tortfeasor, and thus ameliorating the adverse effect on the second objective (fair sharing of fault). It was left somewhat in limbo when a determination of good faith was to be made.
 
 
 36
 California adopted in 1957 the 1955 version of the Uniform Act almost word for word in section 877. It also later adopted in 1980 Cal.Civ.Proc.Code Sec. 877.6 (West Supp.1990) to provide for an interlocutory determination of good faith through a motion and hearing before the trial judge. Any party to the pending action can initiate the section 877.6 hearing. The obvious purpose of this statute is to determine at an early state what effect, if any, a settlement has on the setoff against other defendants and on contribution rights. The statute also provides for early appellate review by a writ of mandate which is to be given precedence by the appellate court.
 
 
 37
 We note that section 877.6 is essentially a procedural statute. The section 877.6 procedures do not govern a federal action even though the settlement agreement provides that California law applies. It is the substantive provisions of California law that are applicable (in this case section 877).[6] However, nothing is to prevent the district court from granting a motion for an early determination of the good faith question. In fact, it makes eminent good sense to do so. Butler and FSLIC moved for such a determination and the district court granted it. The interested parties were notified and the determination was made. The early appellate review was granted by means of this 28 U.S.C. Sec. 1292(b) appeal.
 
 B.
 
 38
 We now turn to the interpretation of the California substantive statute, section 877. The crucial issue on this appeal is what is the appropriate amount of setoff to be accorded to the nonsettling defendants. The district court held that if the setoff was $8.4 million--the value FSLIC placed on the consideration received--it did not consider this a good faith settlement. However, because it found the setoff was the $165.5 million--the stipulated liability of Butler--then this was a good faith settlement. FSLIC contests the ruling that this liability determination is an appropriate basis for the setoff.
 
 
 39
 The dispositive question of statutory construction in this case is the meaning of section 877(a), which provides that the release, dismissal, or covenant not to sue "shall reduce the claims against [the nonsettling defendants] in the amount stipulated by the release, the dismissal or the covenant, or in the amount of consideration paid for it whichever is the greater." In this case, the district court interpreted the stipulated liability of Butler in the amount of $165.5 million as being the amount the parties had stipulated to be the reduction in claims against the codefendants. The question before us is whether this is an appropriate construction of the California statute.
 
 
 40
 The meaning of the phrase "the amount stipulated by the release, the dismissal or the covenant" is the essential issue. The key question is the "amount [of what] stipulated by the release, the dismissal or the covenant." There are numerous "amounts" that could be specifically agreed to in the course of a settlement agreement, e.g., (1) the plaintiff's total loss, (2) the joint and several liability of the settling defendant, (3) the proportional share of the settling defendant's liability if divided equally among all the defendants, (4) the proportional share of the settling defendant's liability based on percentage of fault, (5) the defendant's liability, discounted by litigation risk, and (6) the amount the plaintiff and settling defendant agree the total claims are to be reduced. The settlement agreement could have discussed and agreed upon several or any one of these amounts for any number of purposes; but it would not be a sensible construction that any one of these that happen to be specified and agreed upon during the course of the agreement should be considered "the amount stipulated" for the purpose of determining the setoff against future recoveries.
 
 
 41
 For a reasonable interpretation, we must look at what the legislature intended to accomplish. It is apparent that the amount of any consideration received should be set off against any future recovery. A plaintiff is not entitled to recover for more than his total damages. This amount is easily determined when a monetary sum is received. Valuation problems are encountered when stock or intangibles, such as the assigned insurance claim, are involved. The parties' estimate of valuation can be inquired into and reassessed by the court. However, the determination of the consideration paid is distinct from "the stipulated amount." The latter is the amount the parties have agreed can be set off against future recoveries.
 
 
 42
 It is apparent that the statute creates two possible bases for setoff (1) the amount of the consideration paid or (2) the amount the parties agreed should be set off. The amount to be set off is to be the amount of the consideration paid or some greater amount that the plaintiff and defendant mutually agree should be the set off. Why would a plaintiff agree to a larger setoff than the amount he receives? One reason may be because this may enhance the likelihood that the court will find the settlement to be in good faith. It may be that the plaintiff believes the court will evaluate the settling defendant's proportion of fault, the possible recovery, or other factors such that the court cannot approve the settlement unless a higher setoff figure is provided.
 
 
 43
 This "amount" specifically addresses the point in issue--the amount of setoff against future recoveries. The agreement on the amount of setoff should be very specific before the plaintiff is considered to have agreed to a setoff larger than what he received in consideration from the settling defendant. A stipulation as to a defendant's liability, or proportional liability, or liability discounted by the risk of litigation is not a specific agreement as to a setoff greater than the consideration he actually receives.
 
 
 44
 A stipulation to such other amounts may be relevant for other purposes, such as the determination of good faith. As we have noted, the provisions of section 877 require that any settlement that cuts off the right of contribution by nonsettling defendants must be in good faith. The California Supreme Court in Tech-Bilt, Inc. v. Woodward-Clyde & Assoc., 38 Cal.3d 488, 213 Cal.Rptr. 256, 698 P.2d 159 (Cal.1985), enumerated the factors to be considered in a judicial determination of whether the settlement was made in good faith within the meaning of section 877. The court noted that in its earlier decision in American Motorcycle Assoc. v. Superior Court of Los Angeles County, 20 Cal.3d 578, 146 Cal.Rptr. 182, 578 P.2d 899 (Cal.1978) it had developed the theory of partial or comparative indemnity, which was designed to allocate the damages among joint tortfeasors in proportion to their relative culpability. Tech-Bilt, 38 Cal.3d at 495, 213 Cal.Rptr. at 260-61, 698 P.2d at 163-64. The American Motorcycle decision also held that section 877 should also apply to discharge a settling tortfeasor. Id. This was later codified in section 877.6(c).
 
 
 45
 The Tech-Bilt opinion then listed a number of factors to be taken into account in assessing the good faith of a settlement under section 877, in the framework of a section 877.6 hearing.
 
 
 46
 [T]he intent and policies underlying section 877.6 require that a number of factors be taken into account including a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial. Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants. (See In re MGM Grand Hotel Fire Litigation, (D.Nev.1983) 570 F.Supp. 913, 927.) Finally, practical considerations obviously require that the evaluation be made on the basis of information available at the time of settlement. "[A] defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be." (Torres v. Union Pacific R.R. Co. (1984) 157 Cal.App.3d 499, 509, 203 Cal.Rptr. 825.) The party asserting the lack of good faith, who has the burden of proof on that issue (Sec. 877.6, subd. (d)), should be permitted to demonstrate, if he can, that the settlement is so far "out of the ballpark" in relation to these factors as to be inconsistent with the equitable objectives of the statute. Such a demonstration would establish that the proposed settlement was not a "settlement made in good faith" within the terms of section 877.6.
 
 
 47
 Id., 38 Cal.3d at 499-500, 698 P.2d at 166-67.
 
 
 48
 An agreement between FSLIC and Butler as to his total joint liability, since he was involved in all of the transactions, has relevance to the good faith determination because any determination of his proportionate liability would be in relation to the total liability.[7] Furthermore, this agreement on liability had relevance to the claim against the insurance carrier for bad faith refusal to settle under the then current California law, as we earlier discussed.
 
 
 49
 Although the admission of liability has relevance for other purposes, it is not an agreement that a particular amount is to be set off against future claims. If the settling defendant is jointly and severally liable along with nonsettling defendants for the damages, an acknowledgement of that liability does not address the question of how much the offset to nonsettling defendants is to be. A stipulation of the amount owed is simply not the same as the amount of the consideration paid nor a stipulation of the amount to be set off against the claims of the other defendants.
 
 C.
 
 50
 The legislative history is also supportive of our construction of section 877. Section 877 was enacted in 1957. 1957 Cal.Stat. 3077, ch. 1700, Sec. 1 ("1957 Act"). The California Supreme Court has noted that this statute substantially parallels the language of section 4 of the proposed Uniform Contribution Among Tortfeasors Act as revised in 1955, which has already been set forth above on page 511. Tech-Bilt, 38 Cal.3d at 494 n. 4, 213 Cal.Rptr. at 260 n. 4, 698 P.2d at 163 n. 4.
 
 
 51
 In construing an act that has been adopted from an act proposed by the National Conference of Commissioners on Uniform State Laws & Proceedings, it is reasonable to assume that the deliberations of that body and the comments to the proposed law are considered by the legislature adopting the Uniform Act. The 1955 Uniform Act was a revision of the earlier Uniform Act adopted by the Commissioners in 1939. This 1939 Uniform Act was never adopted by California, but the deliberations of Commissioners in changing from the 1939 Uniform Act are relevant legislative history in considering the meaning of the 1955 Uniform Act.
 
 
 52
 The purpose of the change, as reflected by the Commissioners' Comment, was to provide for a bar against all liability for contribution by the settling defendant, provided that the agreement was in good faith. The objective was to encourage settlement. There was no intent to change the meaning of the provision here in issue. The Commissioners' Comment noted that there was no significant change from the 1939 version in the 1955 section 4(a), (which is equivalent to section 877(a) of the California statute). Uniform Contribution Among Tortfeasors Act of 1955, Sec. 4(a), Commissioners' Comment, reprinted in 12 U.L.A. 98-99 (West 1975) (noting subsection 4(a) "is retained from Section 4 of the 1939 Act" and "[t]here seems to have been little difficulty with the 1939 provision"). The 1939 version, as set forth in section 4 of that act, stated:
 
 
 53
 Sec. 4. Release; Effect on Injured Person's Claim.--A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides; but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.
 
 
 54
 Uniform Contribution Among Tortfeasors Act of 1939, Sec. 4, reprinted in 12 U.L.A. 57-58 (West 1975) (emphasis added).
 
 
 55
 The language in section 4 of the 1939 version makes it very clear that the amount to be set off, if greater than the consideration paid, is the amount the parties provide the claim is to be reduced. The shorter phrase in subsection 4(a) of the 1955 version was not intended to change the meaning. Thus, "the amount stipulated" in the 1955 version was meant to be the same as the "amount" referenced in the 1939 version, not some other amount.
 
 
 56
 The evolution of the Uniform Act, which preceded the adoption of the 1955 version of the Uniform Act in section 877(a) of the California statutes is supportive of our interpretation of the statute. There appears to be no other relevant legislative history in the California legislature that bears on this particular issue. The California Supreme Court has noted the significance of the parallel to the provision of the Uniform Act. See, e.g., Abbott Ford, Inc. v. Superior Court of Los Angeles County, 43 Cal.3d 858, 892, 239 Cal.Rptr. 626, 649, 741 P.2d 124, 147 (Cal.1987) (Mosk, J., dissenting) ("Section 4 [of the 1955 Act] was plainly the sole and immediate source of proposed section 877 [of the 1957 Act]: section 877 parallels section 4 almost word for word, and research has not disclosed the existence of any other model."); Tech-Bilt, 38 Cal.3d at 494 n. 4, 213 Cal.Rptr. at 260 n. 4, 698 P.2d at 163 n. 4 (noting section 877 of the 1957 Act "substantially parallels" section 4 of the 1955 Act).
 
 
 57
 In this case, the stipulation of FSLIC and Butler as to Butler's admitted liability of $165.5 million is a relevant figure for the court to consider in the evaluation of good faith. However, it is not a stipulation to an amount to reduce the claims against the other defendants.
 
 
 58
 We are cognizant of the decision of the Alaska Supreme Court which reaches a contrary conclusion. Tommy's Elbow Room, Inc. v. Kavorkian, 754 P.2d 243 (Alaska 1988). We simply disagree. That court found the term "the amount stipulated" not to be ambiguous. We conclude that it is ambiguous, but when interpreted in light of the purpose of the statute and the legislative history, as reflected in the evolution of the provision in the uniform act, the meaning is clear.
 
 IV.
 
 59
 This district court found the release to be in good faith because of its interpretation that the $165.5 million was a stipulated amount to be credited against the claims of the nonsettling defendants. A remand is required to determine the good faith of this settlement solely on the basis of the consideration received, which would include the valuation of the claim against the insurance carrier. FSLIC and Butler have indicated the possibility of a revised settlement agreement. Nothing in this opinion precludes such a revision or an evaluation of a revised agreement to determine if it is in good faith as provided in section 877 and interpreted by Tech-Bilt.
 
 
 60
 REVERSED and REMANDED.
 
 
 
 *
 At oral argument, the court was informed that Federal Savings and Loan Insurance Corporation has been succeeded in interest by the Federal Deposit Insurance Corporation. See Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101-73, Sec. 215, 103 Stat. 183, 252. No motion has been made for a substitution of parties. See Fed.R.App.P. 43. In this appeal, we maintain reference to FSLIC
 
 
 [1]
 FSLIC states that it agreed to allow Butler to retain 10% of the policy proceeds in view of other shareholder claims that Butler had settled or that were pending against him
 
 
 [2]
 Since the time of the settlement agreement, the California Supreme Court in Moradi-Shalal v. Fireman's Fund Ins. Co., 46 Cal.3d 287, 250 Cal.Rptr. 116, 758 P.2d 58 (Cal.1988) overruled Royal Globe and held that direct actions could no longer be brought under section 790.03. The court held further that an admission of liability by the insured in a direct action insufficient to support the claim and that a judicial determination of liability was required. More recently, the California Supreme Court held that a stipulation of the insured's liability signed by the insurer, insured, and third party claimant and entered as a judgment satisfies the condition precedent of "a final judicial determination" specified in Moradi-Shalal. California State Auto. Ass'n Inter-Ins. Bureau v. Superior Court for the City & County of San Francisco, 50 Cal.3d 658, 268 Cal.Rptr. 284, 788 P.2d 1156 (Cal.1990). These holdings appear to cast doubt on the ability to establish the prerequisite of a determination of liability only by admission of the insured in the assigned cause of action as well
 
 
 [3]
 According to papers filed by Butler and FSLIC before the district court, this valuation was based on $290,000 in cash, $137,403 in stock (at ten cents a share), and $8 million for assignment of Butler's rights under certain insurance policies and for Butler's cooperation with FSLIC in the Bell Savings action
 
 
 [4]
 Butler joins in FSLIC's appeal and adopts the FSLIC briefs
 
 
 [5]
 The device of a covenant not to sue was developed to circumvent this result
 
 
 [6]
 The major substantive provision is section 877; however, the addition of section 877.6(c) did make a substantive modification by codifying a Supreme Court ruling that section 877 applied to partial or comparative indemnity as well as contribution, as hereinafter discussed
 
 
 [7]
 It is apparent from the attachments to the agreement that the figure of $165.5 million is a discounted figure, as FSLIC contends, from Butler's total potential liability of $222,195,912, to reflect the risks of litigation