[No. A043516. First Dist., Div. One. Feb. 11, 1991.]

ROBERT M. ARBUTHNOT et al., Plaintiffs and Respondents, v. RELOCATION REALTY SERVICE CORPORATION et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

COUNSEL

Ropers, Majeski, Kohn, Bentley, Wagner & Kane, Mark G. Bonino, Julian J. Pardini, Ralph Tortorella, Burnhill, Morehouse, Burford, Schofield & Schiller, Howard L. Churchill and Susan G. Simon for Defendants and Appellants.

Monroe, Flitner & Nellessen and Robert A. Nellessen for Plaintiffs and Respondents.

OPINION

DOSSEE, J.—Appellants contend the trial court should have set off against the damage award an amount stipulated in a settlement agreement, that there was insufficient evidence to support the jury's verdict, and that the trial court gave an erroneous jury instruction.

The judgment is reversed and remanded for a hearing on the issue of setoff. In all other respects, the judgment is affirmed.

*Factual and Procedural Background*

The Arbuthnots purchased a residence in Orinda located on a cul-de-sac known as Silverwood Court in 1978. The rear of the property sloped downhill into a ravine, and there was a history of soil instability in the area. An adjoining lot was owned by John Spaulding, an executive with Getty Oil Company, who, in 1981, was transferred to Utah.

Relocation Realty Service Corporation (Relocation Realty), pursuant to a contract with Getty Oil, assisted in the sale of transferred employees' homes. If the property was not sold quickly, Relocation Realty paid the employee the equity value of the house, acquiring what it called an "equitable interest" in the house. Legal title remained with the employee until the property was sold to another party. Relocation Realty entered into such an agreement with Spaulding on August 1, 1983, paid Spaulding $253,500, and assumed an obligation to maintain Spaulding's property.

Spaulding had installed a catch basin on his property which funnelled surface water into a storm drainage system. According to the Arbuthnots, the catch basin became clogged and surface water saturated the soil on the Spaulding property during the winter of 1983-1984, resulting in the loss of soil, the formation of a large landslide scarp adjacent to their property, and the loss of lateral support for their property. The Arbuthnots notified Relocation Realty of the problem, but Relocation Realty took the position that the problem had existed before it acquired its equitable interest, and, therefore, Spaulding was responsible for the problem. Relocation Realty had retained consultants to evaluate slope and drainage problems, and it was aware that problems existed.

The Arbuthnots filed a complaint for damages to real property and to abate a nuisance on June 4, 1984. Spaulding, Relocation Realty, and Getty Oil were all named as defendants. On August 13, 1985, default was entered against Spaulding. Spaulding had believed that counsel for Getty Oil would handle the matter for him. In fact, Getty Oil and Relocation Realty filed a cross-complaint for indemnity against Spaulding.

On January 17, 1986, Spaulding and the Arbuthnots entered into an agreement entitled "COVENANT AND AGREEMENT NOT TO ENFORCE OR EXECUTE ON JUDGMENT, AND ASSIGNMENT OF CHOSE IN ACTION." Pursuant to this agreement (hereafter, the settlement agreement), Spaulding agreed to allow the entry of a default judgment against him, to assign to the Arbuthnots all of his claims against Getty Oil arising out of its conduct leading to the entry of default against him, and to cooperate with the Arbuthnots in any action against Getty Oil. In exchange, the Arbuthnots agreed not to enforce the default judgment to be entered against Spaulding and to release him from any liability in this action.[1] Subsequently, on May 1, 1986, the trial court entered a default judgment against Spaulding in the amount of $531,350.

On June 20, 1986, Spaulding moved for court approval of the settlement agreement, and, notwithstanding "CONDITIONAL OPPOSITION" by

---

[1] The Arbuthnots, asserting Spaulding's rights, filed a complaint against Getty Oil in federal district court on November 9, 1987.

Relocation Realty and Getty Oil, the court granted Spaulding's motion and dismissed the cross-complaint against Spaulding. The court denied without prejudice, Relocation Realty's and Getty Oil's request to reduce any judgment against them pursuant to Code of Civil Procedure section 877,[2] by the amount of the default judgment, $531,350.

On March 23, 1987, Relocation Realty and Getty Oil filed a motion for setoff pursuant to section 877, again asserting they were entitled to a reduction in the amount of $531,350 against any unfavorable judgment. The court deferred ruling on the motion, concluding the motion should wait until trial. When Relocation Realty and Getty Oil renewed the motion in April 1988 shortly before trial, the court denied the motion on the ground it could not determine the amount of consideration actually paid by Spaulding in settlement.

Following a lengthy trial, the jury found for the Arbuthnots and awarded them $202,000 in damages against Relocation Realty and Getty Oil, and the court entered judgment in conformity with the verdict. Relocation Realty and Getty Oil appeal.

*Discussion*

I. Section 877 Setoff

 Appellants contend they are entitled to a setoff of $531,350 against the judgment. Appellants do not challenge the finding that the settlement was entered into in good faith,[3] but they insist that given such a settlement, there must be some reduction of the claims against them. Appellants argue that under the settlement agreement, the Arbuthnots and Spaulding stipulated that the amount of the default judgment represented the value of the settlement.

Section 877 provides in pertinent part:

"Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect:

---

[2] All further statutory references are to the Code of Civil Procedure unless otherwise noted.

[3] Indeed, they maintain this court should not overturn the trial court's good faith finding. At the hearing on Spaulding's motion to approve the settlement, all the parties agreed the settlement was made in good faith, and only the setoff issue was disputed.

"(a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater.

"(b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties."[4]

■ The inextricably linked goals of sections 877 and 877.6 are the equitable sharing of costs among the parties at fault and the encouragement of settlements. (*Abbott Ford, Inc.* v. *Superior Court* (1987) 43 Cal.3d 858, 871-872 [239 Cal.Rptr. 626, 741 P.2d 124]; see *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 494-496 [213 Cal.Rptr. 256, 698 P.2d 159].) Pursuant to section 877, a good faith settlement bars nonsettling defendants from seeking contribution from a settling defendant, but in return the nonsettling defendants' ultimate liability to the plaintiff is reduced by the amount stipulated by the release or by the amount of consideration paid. (*Abbott Ford* at p. 873.)

■ Despite a statement by Spaulding in his moving papers to confirm the settlement which appellants heavily rely on, the Arbuthnots and Spaulding never stipulated to an amount by which the claims against the nonsettling defendants would be reduced. Nor did the Arbuthnots, Spaulding, or the trial court ever calculate the value of the consideration given by Spaulding for his release from liability.

The settlement agreement itself contains no specific stipulation as to the amount of any setoff. In his points and authorities in support of his motion for court approval of the settlement agreement Spaulding did state, "The default judgment allowed to be entered against MR. SPAULDING constitutes the amount stipulated in the Covenant Not to Execute," but at the hearings on the issue of setoff neither the Arbuthnots nor Spaulding ever agreed with the idea that the amount of the default judgment, $531,350, which was determined after the execution of the settlement agreement, was intended to represent the amount of setoff. As the trial court's rulings demonstrate, it did not believe the Arbuthnots or Spaulding had stipulated to a setoff of $531,350, nor that the amount of the consideration given by Spaulding was $531,350.

Of help here is a recent opinion from the Ninth Circuit Court of Appeals, *Federal Sav. and Loan Ins. Corp.* v. *Butler* (9th Cir. 1990) 904 F.2d 505,

---

[4]The procedure to be followed in determining whether a settlement was entered into in good faith is set forth in section 877.6.

which applied section 877 to a settlement agreement involving noncash consideration. Butler was one of numerous defendants in an action brought by the Federal Savings and Loan Insurance Corporation (FSLIC) in an attempt to recoup millions of dollars lost by a savings and loan association allegedly through speculative lending, fraudulent transactions, and self-dealing. Butler entered into a settlement agreement with the FSLIC under which he stipulated that he was obligated to pay $165.5 million in damages. (*Id.* at p. 507.) However, the agreement provided for actual payment of $290,000 in cash, transfer of Butler's stock in the parent corporation of the savings and loan association to the FSLIC, assignment of 90 percent of Butler's rights to the proceeds of certain insurance policies, and assignment of his rights to pursue claims for breach of the covenant of good faith and fair dealing against the insurance carrier. (*Ibid.*) The FSLIC and Butler requested that Butler's consideration under the settlement agreement be valued at $8.4 million and that the setoff for purposes of section 877 be in that amount. (*Id.* at p. 508.)

The Ninth Circuit rejected the contention that the amount of the acknowledged liability, $165.5 million, was the amount to be credited against claims against the nonsettling defendants. "Although the admission of liability has relevance for other purposes, it is not an agreement that a particular amount is to be set off against future claims. If the settling defendant is jointly and severally liable along with nonsettling defendants for the damages, an acknowledgement of that liability does not address the question of how much the offset to nonsettling defendants is to be. A stipulation of the amount owed is simply not the same as the amount of the consideration paid nor a stipulation of the amount to be set off against the claims of the other defendants." (904 F.2d. at p. 513.)

On a point particularly relevant to the present case, the Ninth Circuit observed that, "The agreement on the amount of setoff should be very specific before the plaintiff is considered to have agreed to a setoff larger than what he received in consideration from the settling defendant. A stipulation as to a defendant's liability, or proportional liability, or liability discounted by the risk of litigation is not a specific agreement as to a setoff greater than the consideration he actually receives." (904 F.2d at p. 512.)

Pursuant to the settlement agreement here, Spaulding gave up his claims or causes of action against Getty Oil, agreed to allow a default judgment to be entered against him, and agreed to cooperate with the Arbuthnots. The settlement agreement set no value for Spaulding's consideration and, as of this date, no value has been assigned to this consideration. Although it is possible $531,350 represents a reasonable estimate of the setoff, we conclude

that the parties did not stipulate to this amount nor did the trial court determine that this was the amount of the consideration given by Spaulding.

We now turn to the questions of how and when the setoff amount should be determined. ■ Section 877 does not require the direct payment of money nor does it impose any requirement as to how and when the consideration is paid. (See *Abbott Ford, Inc.* v. *Superior Court, supra,* 43 Cal.3d at pp. 877-878 [sliding scale/"Mary Carter" settlement agreement]; *Armstrong World Industries, Inc.* v. *Superior Court* (1989) 215 Cal.App.3d 951, 955-956 [264 Cal.Rptr. 39] [agreement not to seek costs in exchange for waiver of right to appeal]; *Southern Cal. Gas Co.* v. *Superior Court* (1986) 187 Cal.App.3d 1030, 1035 [232 Cal.Rptr. 320] [settlement agreement involving cash plus assignment of tort and contract rights with respect to insurance policy]; see also *Federal Sav. and Loan Ins. Corp.* v. *Butler, supra,* 904 F.2d 505.)

In *Abbott Ford,* the Supreme Court explained the procedure to be followed in the context of a contingent payment settlement. The Supreme Court placed the burden of determining the value of the settlement agreement on the settling parties, and stressed that this should be done at the time the settlement agreement is confirmed so that the trial court can evaluate whether there has been a good faith settlement. (*Abbott Ford, Inc.* v. *Superior Court, supra,* 43 Cal.3d at p. 879.) "[W]e believe the court should not be burdened with the obligation to determine the *actual* value of such an agreement by the use of actuarial or other valuation methods. Rather, the parties to such an agreement, since they are in the best position to place a monetary figure on its value, should have the burden of establishing the monetary value of the sliding scale agreement." (*Abbott Ford* at p. 879, italics in original.)

The Supreme Court noted that the conflicting interests of the plaintiff and the settling defendant should result in a reasonable valuation. (43 Cal.3d at p. 879.) "[S]ince the plaintiff and the settling defendant are likely to have somewhat different, and somewhat conflicting interests in placing a value on the agreement—the plaintiff would prefer the value to be on the low side to reduce the amount that its claims against other defendants will be reduced; the settling defendant will want the value to be high enough to assure that the agreement is found to be within its *Tech-Bilt* 'ballpark' so as to relieve it of liability for comparative indemnity or contribution—requiring a joint valuation by the plaintiff and the settling defendant should generally produce a reasonable valuation. [Citation.]" (*Ibid.*)

The Supreme Court acknowledged that in cases where payment is contingent, the trial court may have difficulty in evaluating the accuracy of the

settling parties' valuation and that it "may not be able to do more than simply make its best estimate . . . ." (43 Cal.3d at p. 879, fn. 23.) The nonsettling defendant, however, is not entitled to a "mini-trial" on the valuation issue, and the nature and extent of the procedure to be followed when a challenge is made is left to the discretion of the trial court. (*Id.* at pp. 879-880, fn. 23.) Certainly the trial court could proceed based on affidavits or declarations submitted by the parties.

We hold that the procedures set forth in *Abbott Ford* for evaluating sliding scale agreements apply in instances such as the one before us, where payment is contingent or where value other than cash is given. As stated in *Armstrong World Industries, Inc.* v. *Superior Court, supra,* 215 Cal.App.3d at page 955, "The controlling statutes do not distinguish between types of legal consideration for purposes of effecting the section 877, subdivision (a) reduction in the liability of nonsettling tortfeasors. The cases hold that settlements involving legal consideration other than a direct payment of money will effect such a reduction if the *Tech-Bilt* 'reasonable range' test is otherwise met."

Here, the trial court mistakenly believed appellants, as the nonsettling defendants, carried the burden of establishing the value of the settlement agreement. After rejecting the figure submitted by appellants, the court found that prior to the resolution of the federal court action, it had no evidentiary basis to determine the value of the settlement.

The settling parties, the Arbuthnots and Spaulding, should have provided the trial court with a value for the settlement agreement. The approach taken by the trial court, to wait for the related litigation in the federal court to be resolved, creates an array of problems which serve to frustrate the section 877 goals to encourage settlement and the equitable sharing of costs among the parties at fault. As a practical matter, the failure to fix the amount of consideration makes it impossible to determine whether that amount is within the reasonable range of the settling tortfeasor's share of comparative liability. Even if all the parties could stipulate that the settlement was made in good faith without fixing the amount of consideration, as effectively was done in this case, we believe the uncertainty created by such a strategy may serve to discourage full settlement of the case. (See *Abbott Ford, Inc.* v. *Superior Court, supra,* 43 Cal.3d at pp. 880-882.) Further, if the settlement is approved without determining the amount of setoff, the settling defendant's incentive to participate in fixing the value of the settlement vanishes. As demonstrated here, Spaulding no longer had any incentive to

participate in fixing the value of the settlement once the settlement was approved and he obtained the dismissal of the cross-complaint against him.[5]

We will remand this case to the trial court for a hearing in accord with the preceding discussion on the amount of consideration "paid" by Spaulding at the time he and the Arbuthnots entered into the settlement agreement.

II., III.*

. . . . . . . . . . . . . . . . . . . . . . . .

The judgment is reversed and remanded for a hearing on the issue of setoff. In all other respects the judgment is affirmed. The parties should bear their own costs on appeal.

Stein, Acting P. J., and Racanelli, J.,† concurred.

A petition for a rehearing was denied March 13, 1991, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied May 2, 1991. Panelli, J., was of the opinion that the petition should be granted.

---

[5] Under the circumstances here, on remand the starting point will have to be a figure submitted by the Arbuthnots, which appellants may then attempt to challenge as being too low. (See *Abbott Ford, Inc.* v. *Superior Court, supra*, 43 Cal.3d at p. 879.)

* See footnote, *ante*, page 682.

† Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.