[No. B042341. Second Dist., Div. One. Dec. 29, 1989.]

J. ALLEN RADFORD COMPANY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
LA MIRADA PARTNERS, Real Party in Interest.

### COUNSEL

Leonard & Dicker and Richard C. Leonard for Petitioner.

No appearance for Respondent.

Fenigstein & Kaufman, Ron S. Kaufman and Carol Hart for Real Party in Interest.

### OPINION

**ORTEGA, J.**—We conclude petitioner, J. Allen Radford Company (JAR-CO), the nonsettling defendant who opposed a motion to confirm the good faith of a "sliding scale recovery agreement"[1] (Code Civ. Proc., § 877.6),[2] is entitled to see the relevant terms of the confidential settlement agreement. We thus conclude the superior court erred in withholding the settlement agreement from JARCO, and grant the petition for a peremptory writ of mandate. The superior court is directed to vacate its order finding the settlement was in good faith.

---

[1] Code of Civil Procedure section 877.5, subdivision (b), defines "sliding scale recovery agreement" for purposes of that section as "an agreement or covenant between a plaintiff or plaintiffs and one or more, but not all, alleged tortfeasor defendants, which limits the liability of the agreeing tortfeasor defendants to an amount which is dependent upon the amount of recovery which the plaintiff is able to recover from the nonagreeing defendant or defendants. This includes, but is not limited to, agreements within the scope of Section 877, and agreements in the form of a loan from the agreeing tortfeasor defendant or defendants to the plaintiff or plaintiffs which is repayable in whole or in part from the recovery against the nonagreeing tortfeasor defendant or defendants."

[2] Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

## BACKGROUND

The underlying consolidated actions and cross-action arose from a lease agreement at the La Mirada Mall (Mall). In April 1986 Saddleback Food Corporation (Saddleback) entered into a ground lease agreement with La Mirada Partners (La Mirada), the Mall's owners and operators. In December 1986 Saddleback entered into a sublease with Paul R. Hickey. The terms of the lease authorized Saddleback and, through the sublease, Hickey to construct a restaurant building on the leased premises.

After Hickey began preparing the site for construction, another Mall tenant, Service Merchandise Company, Inc. (Service), informed La Mirada that Hickey's restaurant construction would violate the terms of Service's lease agreement. In Service's lease La Mirada had agreed the area covered by Saddleback's lease would not be altered without Service's consent. Service contended the erection of Hickey's restaurant would obstruct the visibility of Service's showroom from the street.

When Hickey refused to halt construction, Service filed suit for injunctive relief and specific performance against La Mirada, Saddleback, and others. Service obtained a temporary restraining order halting construction of the restaurant in February 1987.

In March 1987 La Mirada notified Saddleback and Hickey that it was rescinding the lease agreement. La Mirada also filed suit against Saddleback and Hickey for rescission, declaratory relief, quieting of title, ejectment, and injunctive relief.

In July 1987 Saddleback and Hickey filed a cross-complaint against La Mirada, JARCO (La Mirada's alleged managing agent), and others, alleging intentional misrepresentation, negligent misrepresentation, breach of contract, breach of covenant of quiet enjoyment, breach of implied covenant of good faith and fair dealing, tortious breach of contract, intentional infliction of emotional distress, intentional interference with contract, and common counts. Saddleback and Hickey alleged the restrictive covenant contained in the Service lease was unenforceable because it had not been recorded.

In April 1989 La Mirada, having entered into a confidential sliding scale recovery agreement with Saddleback and Hickey, moved for an order confirming the good faith of the settlement. (§ 877.6.) In its moving papers, La Mirada blamed JARCO for negligently entering into the Saddleback lease, which JARCO knew or should have known violated the terms of Service's lease. La Mirada reserved its rights against JARCO, having filed a

cross-complaint for breach of contract, negligence, implied indemnity, and equitable indemnity against JARCO.

The terms of the settlement agreement were only generally described in La Mirada's moving papers. The settlement agreement itself, which the court reviewed in camera, was not made available to JARCO, which opposed La Mirada's motion.

In its moving papers, La Mirada disclosed the following terms of the settlement agreement. La Mirada would pay Hickey and Saddleback $197,500, in the form of a "substantial down payment, with the balance payable over 12 monthly installments and secured by a stipulated judgment against La Mirada . . . and in favor of Hickey and Saddleback." In the event Hickey and Saddleback failed to recover against the nonsettling defendants, La Mirada guaranteed payment of $197,500. This amount, however, could be reduced by an undisclosed amount if Hickey settled or sustained a judgment less than a certain undisclosed sum in an action brought by Hickey's construction lender. Moreover, the amount could also be reduced by an undisclosed sum if Hickey successfully obtained a refund from its construction contractor. In addition, if Hickey and Saddleback received more than $197,500 from JARCO, La Mirada would receive an undisclosed percentage of the excess recovery.

In defending the good faith of the settlement despite JARCO's ignorance of its exact terms, La Mirada argued the settlement would be in good faith even if La Mirada ultimately paid nothing. La Mirada reasoned: "La Mirada's settlement with Hickey and Saddleback thus guarantees Hickey and Saddleback a recovery of not less than $197,500. Although, if a certain benchmark sum is reached in connection with an overall settlement by Hickey and Saddleback with JARCO of the Hickey action, La Mirada's liability to Hickey and Saddleback is reduced, the good faith of La Mirada's settlement with Hickey is not diminished because it was, in fact, JARCO's negligence that bound La Mirada to the lease with Hickey and Saddleback at issue in this action, which JARCO, as the purported managing agent of the La Mirada Mall, should have known violated restrictive covenants contained in Service's lease of premises in the La Mirada Mall."

JARCO argued it could not adequately oppose the motion without seeing the settlement document. The trial court acknowledged that JARCO could not argue the specific factors to be taken into account in determining good faith as enunciated in *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates*

(1985) 38 Cal.3d 488, 499-500 [213 Cal.Rptr. 256, 698 P.2d 159],[3] stating: "You can't say that until you have read the document." The trial court urged JARCO to seek writ review "on seeing the document," stating that if JARCO is successful, then La Mirada "can either hand it [the settlement document] over . . . or withdraw their motion to determine good faith settlement . . . ." The trial court explained it was reluctant to order disclosure because if it did so in error, "the bell is [rung] and cannot be [unrung] . . . ."

In addition, the trial court made the following findings: "I find that the Tech-Bilt factors are satisfied, mainly because it is my finding . . . that [La Mirada's] major exposure is as respondeat superior for the negligence of Jarco in negotiating this Arby's lease. [¶] Secondly, because there is real and not illusory consideration for the settlement. There is real money involved, and because of the complicated nature of the relationships here, although I can't really fix how many dollars may eventually change hands, other relationships are created and adjusted in this document that give consideration for it. [¶] Both sides are getting something out of it of a real nature, both [sides] are giving something up of a real nature. [¶] Finally, it is not possible really at this point for me to project what the total damages are in this relationship. The relationship involves two shopping centers. Hickey doesn't involve the other shopping center. But the relationships between the parties are very, very complicated and involve numerous incidents over a period of time, and I feel that the settlement is in good faith. [¶] It does lay at rest one of the major controversies in the case for good and fair consideration."

---

[3] In *Tech-Bilt,* the court defined "good faith" as follows: "A more appropriate definition of 'good faith,' in keeping with the policies of *American Motorcycle [Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 (146 Cal.Rptr. 182, 578 P.2d 899)] and the statute, would enable the trial court to inquire, among other things, whether the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries. . . . [¶] . . . [T]he intent and policies underlying section 877.6 require that a number of factors be taken into account including a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial. Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants. [Citation.] Finally, practical considerations obviously require that the evaluation be made on the basis of information available at the time of settlement. '[A] defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be.' (*Torres* v. *Union Pacific R.R. Co.* (1984) 157 Cal.App.3d 499, 509 [. . .].) The party asserting the lack of good faith, who has the burden of proof on that issue (§ 877.6, subd. (d)), should be permitted to demonstrate, if he can, that the settlement is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute. Such a demonstration would establish that the proposed settlement was not a 'settlement made in good faith' within the terms of section 877.6." (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d at pp. 499-500, fn. omitted.)

JARCO petitioned for a writ of mandate under section 877.6, subdivision (e). This division denied the petition on July 6, 1989. The California Supreme Court granted JARCO's petition for review on August 24, 1989, and remanded the matter, directing us to vacate our prior order denying the petition and to issue an alternative writ.[4]

## ISSUE

■   The dispositive issue is whether JARCO should have been permitted to see the confidential agreement in order to contest the good faith of the settlement under section 877.6.

## DISCUSSION

Preliminarily, we note that parties may wish, for a variety of reasons, to maintain the confidentiality of the terms of their sliding scale recovery agreement. Besides making the settling defendant's liability dependent on how much the plaintiff recovers from the nonsettling defendants, sliding scale agreements may contain a "virtually unlimited number of additional provisions . . .—for example, *provisions which mandate secrecy,* restrict settlement with the remaining defendants, or provide various forms of financing for the plaintiff's action . . . ." (*Abbott Ford, Inc.* v. *Superior Court* (1987) 43 Cal.3d 858, 870 [239 Cal.Rptr. 626, 741 P.2d 124], italics added.)

However, while the parties are free to maintain the confidentiality of their sliding scale recovery agreement, they may not claim a privilege of nondisclosure when they move to confirm the good faith of their settlement under section 877.6. In California, "[e]xcept as otherwise provided by statute: . . . [¶] (b) No person has a privilege to refuse to disclose any matter or to refuse to produce any writing, object, or other thing." (Evid. Code, § 911, subd. (b).) Since no statute allows the moving party under section 877.6 to refuse to disclose the very terms of the sliding scale settlement agreement that it contends was made in good faith, La Mirada's settlement agreement was not privileged against JARCO's request for disclosure.

According to subdivision (d) of section 877.6, JARCO, as the party asserting the lack of good faith, bears the burden of proof on that issue. Moreover, under Evidence Code section 550, subdivision (b), JARCO also bears the burden of producing evidence on that point. The trial court, by

---

[4] In a letter dated November 27, 1989, and at oral argument, JARCO moved to dismiss the writ petition. JARCO's motion to dismiss the petition is denied.

refusing to permit JARCO to examine the settlement agreement, prevented JARCO from effectively opposing the section 877.6 motion.

While the California Supreme Court cautioned against broad rulings on the inherent validity or invalidity of sliding scale agreements in general, the court noted that the "potential problems posed by a particular provision in such an agreement may call for one remedy—e.g., disclosure of the agreement to the nonagreeing parties or to the jury—in one context, and another remedy—e.g., invalidation of a specific provision, or the agreement as a whole—in a different context." (*Abbott Ford, Inc.* v. *Superior Court, supra,* 43 Cal.3d at p. 871.) In the context of this case, it is readily apparent that JARCO must be allowed to see the settlement agreement in order to attempt to meet its statutory burden of proof on the issue of lack of good faith.

Although we conclude the trial court erred in refusing to permit JARCO to see the settlement agreement, we note, as did the trial court, that La Mirada remains free to withdraw its section 877.6 motion if it does not wish to produce the document. In addition, nothing in this opinion is intended to restrict the rights of the settling parties to rescind their settlement agreement in view of our determination that the agreement is not privileged against disclosure to JARCO in the context of the section 877.6 motion.

### DISPOSITION

Let a peremptory writ of mandate issue, commanding respondent court (1) to vacate its order determining that the settlement agreement was in good faith under section 877.6; and either (2) (a) allow petitioner to review the relevant terms of the settlement agreement and (b) upon further argument by the parties and due consideration enter a new order; or (3) permit real party in interest to withdraw its motion under section 877.6.

Hanson (Thaxton), Acting P. J., and Devich, J., concurred.