[No. A057004. First Dist., Div. One. Aug. 14, 1992.]

ALCAL ROOFING AND INSULATION, Petitioner, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
SEARS SAVINGS BANK et al., Real Parties in Interest.

**COUNSEL**

Low, Ball & Lynch, Sonja E. Blomquist and Ilene M. Isert for Petitioner.

No appearance for Respondent.

Berger & Hopkins, A. Alan Berger, Fierstein & Sturman, Edward C. Broffman, Robert S. Mann, Williams, Kelly, Romanski, Polverari & Skelton and Alan J. Zapala for Real Parties in Interest.

**OPINION**

**MERRILL, J.**—In this opinion, we consider some of the problems involved in settling multiparty construction cases and in obtaining court approval of these settlements. Alcal Roofing and Insulation (roofer hereafter), the sole nonsettling defendant in an action brought over construction defects in a

condominium development, challenges superior court approval of a $4.4 million settlement by Sears Savings Bank (developer hereafter). Roofer does not object to the amount of the settlement, but to the settling parties' allocation of only $100,000 of the settlement to roofing issues. If the court's ruling stands, roofer is still vulnerable to damages which may reach $2 million but will receive an offset of only $100,000 from the settlement. We agree with roofer that the court erred in approving the settlement.

Crestview Park Condominium Association (Association hereafter) filed an action against developer and others alleging strict liability and other causes of action for construction defects. The complaint identified various defects in the roofs, gutters, soil, foundations, landscaping, and other parts of the 277-unit development. Developer cross-complained against the general contractor, the architect, and the various subcontractors and suppliers involved in the project (hereafter, for clarity and convenience, the term subcontractors will be used, somewhat inexactly, to refer to all of the defendants except roofer and developer). Roofer was served with both the complaint and the cross-complaint. Pursuant to orders of the court all parties were deemed to have filed cross-complaints against all other parties for implied indemnity and contribution and to have answered the cross-complaints, raising all appropriate affirmative defenses.

A special master supervised several settlement conferences, including a "mini-trial" of the issues. Under the master's supervision, Association settled with developer for $4.4 million and developer settled with subcontractors, who agreed to contribute almost $1.3 million toward the total. Only roofer was not involved in the settlement. The settling parties agreed that $100,000 of the $4.4 million paid to Association would cover roofing damages.

Developer filed a motion for approval of the settlement pursuant to Code of Civil Procedure section 877.6. After hearing, the court granted the motion. This petition followed (Code Civ. Proc., § 877.6, subd. (e)).

*Good Faith Settlement*

"When a tort action involves multiple defendants, there is often an inherent tension between the state's interest in encouraging the voluntary settlement of litigation and the state's interest in promoting a fair apportionment of liability among the defendants. In an attempt to harmonize these two important interests, California has established a number of interrelated legal principles.

"Under California law, when one of a number of tort defendants enters into a settlement agreement with a plaintiff, the nonsettling defendants'

liability to the plaintiff is reduced by the amount of the settlement. (Code Civ. Proc., § 877, subd. (a).) If the nonsettling defendants believe that the settling defendant has not paid a fair share of the potential liability, and that therefore their liability has not been reduced by a sufficient amount, they may pursue a claim for equitable indemnity against the settling defendant, seeking to compel that defendant to bear an additional share of any liability that may be imposed on them. [Citation.]

"The Legislature has recognized, however, that a defendant is unlikely to settle with a plaintiff if the settlement will not end the defendant's involvement in the litigation and will leave it vulnerable to further liability to other defendants. [Citation.] Accordingly, the Legislature has provided that if a trial court determines a settlement was made in 'good faith,' a settling defendant is relieved of any further liability to the nonsettling defendants for equitable indemnity. (§ 877.6, subd. (c); see, e.g., *Abbott Ford, Inc.* v. *Superior Court* (1987) 43 Cal.3d 858, 871-874 [239 Cal.Rptr. 626, 741 P.2d 124]; *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 494-500 [213 Cal.Rptr. 256, 698 P.2d 159].)" (*Bay Development, Ltd.* v. *Superior Court* (1990) 50 Cal.3d 1012, 1018-1019 [269 Cal.Rptr. 720, 791 P.2d 290], fns. omitted.)

In the typical one-plaintiff, multiple-defendants, personal injury action each tortfeasor is potentially liable for the same injury to the plaintiff. Therefore the full settlement by one defendant will offset a judgment against other tortfeasors; no allocation of the settlement is required. But many lawsuits and many settlements do not fit this pattern. In some, the amount of the offset is uncertain because one settlement covers multiple plaintiffs or causes of action with different damages (see, e.g., *Southern Cal. Gas Co.* v. *Superior Court* (1986) 187 Cal.App.3d 1030 [232 Cal.Rptr. 320]; *River Garden Farms, Inc.* v. *Superior Court* (1972) 26 Cal.App.3d 986 [103 Cal.Rptr. 498]), or because a sliding scale settlement is used and payments by the settling defendant are contingent upon the degree of plaintiff's success against the remaining defendants (see, e.g., *Abbott Ford, Inc.* v. *Superior Court* (1987) 43 Cal.3d 858). In others, the amount of the offset is clouded by injection of noncash consideration into the settlement (see *Arbuthnot* v. *Relocation Realty Service Corp.* (1991) 227 Cal.App.3d 682 [278 Cal.Rptr. 135]; *Armstrong World Industries, Inc.* v. *Superior Court* (1989) 215 Cal.App.3d 951 [264 Cal.Rptr. 39]; *Southern Cal. Gas Co.* v. *Superior Court, supra,* 187 Cal.App.3d 1030) or, as here, by settling claims for separate injuries not all of which would be attributable to conduct of the remaining defendants.

In a situation where the cash amount of the settlement does not dictate the amount of the offset, the settling parties must include an allocation or a

valuation in their agreement. A natural tension will exist between plaintiff, who benefits by undervaluing the settlement in order to permit greater recovery against the remaining defendants, and the settling defendant, who would want the settlement value high enough to be approved in order to relieve settling defendant from liability for comparative indemnity or contribution. "[R]equiring a joint valuation by the plaintiff and the settling defendant should generally produce a reasonable valuation." (*Abbott Ford, Inc.* v. *Superior Court, supra,* 43 Cal.3d at p. 879.)

The settling parties here included an allocation in their settlement. They set $100,000 as the amount of offset available to roofer in the event Association obtains a judgment against roofer. Roofer contends, however, that this unreasonably low figure was set in bad faith and does not accurately reflect the proportion of the settlement which should be attributed to roofing problems. Roofer also argues that the $100,000 allocation should not operate as to all the subcontractors, some of whom may not have agreed to that allocation.

*Evidence About the Settlement*

Under the statute, the burden of proof was upon roofer, "[t]he party asserting the lack of good faith." (Code Civ. Proc., § 877.6, subd. (d).) Roofer presented evidence, through its attorney, that Association's presettlement demand was for $6 million, including $2 million for roofing issues, and that during the final settlement conference developer invited each subcontractor except roofer to discuss settlement. Counsel asserted that roofer was prepared to negotiate a settlement at that time.

In its motion to confirm the settlement, developer took the position that an allocation of $100,000 to roofing problems was appropriate because roofer and developer had strong statute of limitations defenses to the roofing claim. According to developer, in 1981 Association's property manager hired a roofing consultant whose reports put Association on notice of the problems asserted in the 1986 lawsuit. According to developer, this may mean the action is barred by the three year statute of limitations. If the defense prevails, roofer will avoid liability and developer will have overpaid by $100,000.

At the hearing, Association's counsel asserted, without objection, that roofer's last settlement offer was $400,000 and suggested that an allocation of one-fourth of the amount was reasonable. He also admitted that in discussion with developer's attorneys he had determined that developer's responsibility for roofing issues was "just under one million dollars." Counsel then discounted that amount by asserting that developer's true responsibility was less than $100,000 because developer could only be blamed for lack of supervision.

Developer's counsel argued that developer should shoulder a lesser responsibility for roofing problems because it was just the "strict liability party," not the party that picked up hammer, nails and shingles. In developer's view, it had extensive indemnity rights against roofer, not vice versa.

Roofer's counsel's declaration partially rebutted developer's contention that the low allocation was justified by the strong statute of limitations defense. Counsel noted that the 1981 consultant's report was presented to Association's board of directors at a time when developer's employees were among the board members. According to board minutes, these employees played down the significance of the report. The argument implied in that evidence is that developer's statute of limitations defense may have been compromised by efforts of its employees to conceal the seriousness of the defects and that a reduced allocation for roofing issues cannot rest solely on the statute of limitations defense.

*Framework for Evaluating Settlement*

In effect the settling parties have severed the case into two parts, the nonroofing issues and the roofing issues. Because roofer is not involved in the nonroofing issues, that part of the action has been terminated by a settlement for $4.3 million (assuming the court's confirmation of the settlement is affirmed). The roofing action continues, but only against one defendant. The other defendants have settled for $100,000, paid by the developer with some reimbursement effected by the settlements with several roof-related subcontractors. In evaluating the settlement, the question is whether $100,000 is an appropriate amount for the developer and all the settling subcontractors to pay to settle the roofing claims against them. But other problems with the good faith ruling divert us from examining the basis for the $100,000 allocation.

*Written Settlement Agreement*

In its opposition brief and during oral argument in this matter, Association admitted that the written settlement agreement was not before the trial court. Roofer contends that the court erred in confirming the settlement without reviewing the written settlement agreement. Roofer notes that developer's motion to confirm referred only to *developer's* allocation of $100,000 to roofing issues, whereas the court's order confirmed an allocation of $100,000 by all the settling parties. Roofer contends that there was no evidence before the court that parties other than the developer allocated only $100,000 to roofing issues. This issue is crucial because if only developer, not subcontractors, allocated its settlement primarily to nonroofing issues,

roofer may obtain an offset for the settlement of each of the other defendants, limited only by the amount of each settlement.

Developer contends that a court need not review the written settlement agreement in order to confirm a settlement. Developer asserts that the court was aware of all of the terms of the settlement when it issued its order confirming it and cites *City of Grand Terrace v. Superior Court* (1987) 192 Cal.App.3d 1251 [238 Cal.Rptr. 119], for the proposition that a court may confirm a settlement even based on a "barebones" declaration describing in general the terms of the settlement.

Developer overstates the impact of *Grand Terrace*. The court there merely suggested that because many settlements are uncontested the settlor's initial papers need only "set[ ] forth the ground of good faith accompanied by a declaration which sets forth a brief background of the case." (*City of Grand Terrace v. Superior Court, supra*, 192 Cal.App.3d at p. 1261.) This does not excuse settlors in a *contested* case from making available to nonsettlors and the court the details of the settlement. (See generally, Flahavan et al., Cal. Practice Guide: Personal Injury (The Rutter Group 1991) ¶ 4:199.4, pp. 115-116.) ■ We note that a party may not both seek confirmation of a settlement agreement and withhold it from nonsettling defendants on grounds of confidentiality. (*J. Allen Radford Co. v. Superior Court* (1989) 216 Cal.App.3d 1418, 1423-1424 [265 Cal.Rptr. 535].)

■ We agree with developer that a written settlement agreement need not be executed and presented as long as the court and all the parties are timely advised of the important terms of the settlement. ■ But roofer disputes developer's assertion that the court was aware of the key terms of the settlement. Roofer says that even to this day neither the court nor roofer knows what the settlement agreement says. We too lack critical information. After asking pointed questions during oral argument, we still are not certain who settled with whom and which parties made what allocations to roofing issues.

*Allocation to Roofing Issues*

The dollar amount of the offset against any judgment against roofer depends upon how Association settled its claims against all the joint tortfeasors on the roofing claims. If any of them did not allocate part of its settlement to nonroofing issues, roofer may obtain an offset for the entire amount of that defendant's settlement. The court purported to determine that all the settling parties jointly allocated a total of $100,000 from their various settlements to roofing issues. But roofer asserts to us that a sheet metal contractor told roofer it had not agreed to the allocation.

We cannot determine from the documents before us what settlement or settlements took place and what parties agreed to what allocations. The court's order describes a single settlement and says that Association, developer, and various subcontractors are its parties. But Association tells us in its brief and said during oral argument that it settled only with developer, who settled directly with all subcontractors. Association says that separate motions were heard to confirm some of these other settlements. Roofer agrees that separate motions were filed and points out that roofer declined to oppose them on the condition that the settlements did not include allocations and that the offset would not be affected by the settlements. Roofer presumes from court approval of those settlements that they did not include allocations.

We cannot determine whether there was (a) one settlement between all the parties except roofer, or (b) a settlement between Association and developer and several separate settlements between developer and subcontractors, in which Association did not participate. If subcontractors did not settle with Association, we question their right to invoke Code of Civil Procedure section 877.6, (which applies to "a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors") and to avoid equitable indemnity to roofer. We cannot determine whether the court actually approved one set of subcontractor settlements without allocations and then a second set with allocations, or purported to approve the same set of settlements twice, ascribing different terms to them each time. If two sets have been approved, we question which settlement controls. If the court approved the same set twice, we wonder which approval dictates the amount of roofer's offset.

We also question whether the settlement included additional consideration not valued by the settling parties. The court failed to acknowledge at the hearing or in its order roofer's assertion that, as part of the settlement, developer assigned all its indemnity rights against roofer to Association. If a settling defendant assigns indemnity rights to the plaintiff, the assignment may constitute valuable additional consideration for settlement. Without more information about the assignment, we cannot determine whether valuable consideration was transferred here or whether the assigned rights merely duplicated Association's existing rights against roofer. If the assigned rights were valuable, the settlement agreement should have set their value and the court should have considered the added value when determining whether the settlement was in good faith. (*Southern Cal. Gas Co.* v. *Superior Court*, *supra*, 187 Cal.App.3d 1030, 1036.) The added value would then be included in any offset to any judgment against roofer. The court seems to have ignored the assignment of rights and to have failed to require the settling parties to set a value for it.

Developer and Association lay blame on roofer for failing to present convincing evidence that $100,000 was an improper joint allocation to roofing issues. We conclude, however, that roofer's burden to show an improper allocation did not arise during the proceedings below because the settling parties failed to present to roofer and the court a clear and complete description of the settlement or settlements. At a minimum, a party seeking confirmation of a settlement must explain to the court and to all other parties: who has settled with whom, the dollar amount of each settlement, if any settlement is allocated, how it is allocated between issues and/or parties, what nonmonetary consideration has been included, and how the parties to the settlement value the nonmonetary consideration.

 Because we cannot determine (1) what settlement or settlements the court approved, (2) when and in what way the subcontractors settled and joined in the allocation, and (3) the value of the assigned rights, we cannot allow the court's order to stand. We issue a peremptory writ of mandate to compel the court to vacate its decision.

During oral argument, Association and developer emphasized the long hours devoted to settling this case and urged us not to nullify their efforts. We fully sympathize with their concerns. Our ruling does not invalidate the settlement or settlements. It only requires the court to vacate its ruling confirming the settlement. Upon presentation of the full details of the settlement or settlements the court may confirm again if the settlement or settlements meet the requirements for good faith.

We deny requests by Association and developer for sanctions and attorney fees for defending the petition. They correctly criticize roofer for misleading this court by omissions in its petition. But most of the information omitted from the petition was contained in the exhibits attached thereto, and the omissions were no more serious than the failure of these settling parties to furnish the full details of the settlement agreement or agreements to roofer and the superior court.

Let a peremptory writ of mandate issue directing the San Mateo County Superior Court to vacate its order filed March 3, 1992, confirming the settlement.

White, P. J., and Werdegar, J., concurred.