[No. A074821. First Dist., Div. Four. Feb. 6, 1997.]

L. C. RUDD & SON, INC., Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
JACK KRYSTAL et al., Real Parties in Interest.

**COUNSEL**

John J. Carniato and Gregory G. Dahl for Petitioner.

No appearance for Respondent.

Gregory R. de la Peña and Michael E. Scholtes for Real Parties in Interest.

**OPINION**

**ANDERSON, P. J.**—L. C. Rudd & Son, Inc. (petitioner), a nonsettling defendant in a construction defects suit, seeks a writ of mandate to set aside a determination that a settlement in the action was in good faith. Petitioner contends the settlement as a whole was disproportionately low and, in this regard, that petitioner was improperly denied financial discovery. Petitioner also contends that the settlement order makes an improperly low allocation of the settlement proceeds to those defects for which petitioner could be potentially liable. We conclude that petitioner is correct as to the latter contention and that the petition should be granted.

*Facts and Procedural History*

The real estate project involved in this action is a 10-unit condominium project. Santa Clara Commons Homeowners' Association, Inc. (hereafter plaintiff), sued Jack Krystal and Diversified Realty Services, Inc. (hereafter developers), the general contractor "HRW Construction" and petitioner, the rough grader for the project. The defendants filed cross-complaints for indemnity against each other.

Developers agreed to settle with plaintiff for a total cash consideration of $90,000 plus assignment of developers' indemnity rights against the nonsettling parties. Developers, along with plaintiff, filed a motion to determine the good faith of the settlement. Opposition was filed by petitioner and proceedings were held before a special master. The settlement terms were somewhat revised in accordance with the recommendations of the special master and, as so revised, the special master recommended approval of the settlement. As relevant to the instant petition, the special master found the total amount of the settlement to be "in the ballpark" pursuant to *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488 [213 Cal.Rptr. 256, 698 P.2d 159], and allocated $15,000 to defects for which petitioner potentially could be liable.

A hearing on the recommended ruling was held before the court on June 7, 1996. The recommended ruling was accepted by respondent court and filed as its order on that date.

*Timeliness*

Developers contend the petition is untimely. Code of Civil Procedure[1] section 877.6, subdivision (e), provides: "When a determination of the good faith or lack of good faith of a settlement is made, any party aggrieved by the determination may petition the proper court to review the determination by writ of mandate. The petition for writ of mandate shall be filed within 20 days after service of written notice of the determination, or within any additional time not exceeding 20 days as the trial court may allow." Service was by facsimile transmission and by mail on June 11, 1996. Service by mail extends the time by five days (§ 1013, subd. (a)) which would make the petition timely on July 8, 1996, when it was filed. Developers contend the time runs from June 11 because of the facsimile service. However, service by facsimile transmission is permitted only where the parties agree and a written confirmation of that agreement is made. (§ 1013, subd. (e).) Developers make no showing that this agreement was made.

At oral argument, developers argued that section 1013 does not extend the time to file a petition pursuant to section 877.6 because section 877.6 does not itself contain a provision extending time for filing a petition when service is by mail as does, for example, section 437c, subdivision (*l*), which sets forth the time in which petitions challenging summary judgment orders may be filed. This argument is without merit. Section 1013, subdivision (a), itself, provides that the extension when service is by mail "applies in the absence of a specific exception provided for by this section or other statute or rule of court." The petition was timely filed.

*Review by Mandate*

Developers appear to argue that the good faith settlement determination should not be reviewed by petition in this case. First, developers contend that the petition does not meet the general criteria for determining the propriety of an extraordinary writ. However, the general criteria do not apply to petitions concerning good faith settlement determinations. They are reviewable by writ as a matter of statute. (§ 877.6, subd. (e).)

Second, developers contend that petitioner has not suffered harm nor been prejudiced. Developers point out that if petitioner receives a defense verdict and judgment, it cannot be jointly and severally liable for any damage. Next, developers contend that allocations in a motion for good faith settlement are not binding upon the parties in determining setoffs. Regardless of whether, and to what extent, the trial court is ultimately bound in determining credits

---

[1]All further statutory references are to the Code of Civil Procedure.

after trial, the allocations made by the parties are relevant to the good faith of the settlement. As to developers' general point that issues of liability have yet to be determined, that is not a ground for denying the petition as untimely, as developers maintain. The court having made a determination that the settlement was in good faith, any claims by petitioner against developers for contribution or indemnity are barred. (§ 877.6, subd. (c); see *Turcon Construction, Inc.* v. *Norton-Villiers, Ltd.* (1983) 139 Cal.App.3d 280 [188 Cal.Rptr. 580].)

### Good Faith Settlement Determination

■ Where parties to a lawsuit settle "in good faith before verdict or judgment" the settling tortfeasor is released from all liability for any contribution to any other tortfeasors and the claims against the nonsettling tortfeasors will be reduced by the amount of the contribution paid for the release of the settling tortfeasor. (§§ 877, 877.6) To obtain the good faith determination which will produce these results, a determination of the court as to the good faith of the settlement is required at which the party asserting the lack of good faith has the burden of proof on that issue. (§ 877.6.) The Supreme Court in *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d 488, provided guidelines for the determination of good faith as to the overall settlement.

The trial court is to inquire "whether the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries. That is not to say that bad faith is 'established by a showing that a settling defendant paid less than his theoretical proportionate or fair share.' [Citation.] Such a rule would unduly discourage settlements. 'For the damages are often speculative, and the probability of legal liability therefor is often uncertain or remote. And even where the claimant's damages are obviously great, and the liability therefor certain, a disproportionately low settlement figure is often reasonable in the case of a relatively insolvent, and uninsured, or underinsured, joint tortfeasor.' [Citation.] Moreover, such a rule would tend to convert the pretrial settlement approval procedures into a full-scale minitrial [Citation.] [¶] But these considerations do not lead to the conclusion that the amount of the settlement is irrelevant in determining good faith. Rather, the intent and policies underlying section 877.6 require that a number of facts be taken into account including a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial. Other relevant considerations include the financial conditions and

insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants. [Citation.] Finally, practical considerations obviously require that the evaluation be made on the basis of information available at the time of settlement. '[A] defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be.' [Citation.] The party asserting the lack of good faith, who has the burden of proof on that issue [citation], should be permitted to demonstrate, if he can, that the settlement is so far 'out of the ballpark,' in relation to these factors as to be inconsistent with the equitable objectives of the statute. Such a demonstration would establish that the proposed settlement was not a 'settlement made in good faith' within the terms of section 877.6." (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d at pp. 499-500, fn. omitted.)

■ To these considerations which apply to determine whether the total settlement amount is within the "ballpark" and thus in good faith must be added considerations which reveal whether allocations of the settlement proceeds to discrete causes of action have been made in good faith. "Where the settling parties have agreed to allocate less than all of the settlement amount to a portion of the causes of action, an evidentiary showing is required to justify such allocation. [Citation.] The effectiveness of such an allocation depends upon its good faith. 'The statutory requirement of good faith extends not only to the amount of the overall settlement but as well to any allocation which operates to exclude any portion of the settlement from the setoff. [Citations.]' [Citation.]" (*Erreca's* v. *Superior Court* (1993) 19 Cal.App.4th 1475, 1491 [24 Cal.Rptr.2d 156] (hereafter *Erreca's*).)

Obviously, settling defendants such as developers here are not in an adversarial position with plaintiffs as to the allocation of settlement proceeds to separate causes of action. While plaintiffs have an interest in allocating as large an amount as possible to causes of action, in which there are no nonsettling defendants, the settling defendants will be released of further claims against them regardless of the allocation and thus have no interest in the allocation of the settlement proceeds beyond their interest in obtaining a good faith determination. "A presumption that the parties have reasonably allocated a settlement amount between issues in the action should be reserved for a settlement by parties with truly adverse interests in the allocation. [Citation.]" (*Peter Culley & Associates* v. *Superior Court* (1992) 10 Cal.App.4th 1484, 1498 [13 Cal.Rptr.2d 624].)

With these principles in mind we turn to the contentions of petitioner than the present settlement was not in good faith.

## 1. *Total Settlement Consideration*

The settling parties agreed to settle for a total cash consideration from developers of $90,000 plus assignment of developers' indemnity rights against the remaining nonsettling parties. The $90,000 was 50 percent of the total defense bid for repairs. The special master commented in his recommendation that in his experience "a developer contribution of 50% of a defense cost of repair bid is equal to or higher than the norm for cases of this nature" and noted, quoting from *Erreca's, supra*, 19 Cal.App.4th at page 1489, that the court " '. . . may rely on its own expertise and the opinions of experts in reaching a determination of the good or bad faith of a settlement.' "

In arguing that the settlement was disproportionately low, petitioner contends without support in the record that the court ignored evidence provided by petitioner that the developers were primarily responsible for the alleged construction defects. The fact that the court's order does not comment on this factor does not suggest that the special master or the court ignored evidence that was before it. To the contrary, the order recites that the order was made after consideration of ". . . the supporting and opposing memoranda and declarations submitted by other parties to this action and . . . the reply thereto . . . ."

Petitioner also contends that the court ignored evidence that the plaintiff only agreed to the settlement based on the allocation of almost no settlement credit to nonsettling parties.[2] As we will explain below, we find that the court abused its discretion in approving the allocation petitioner attacks. If plaintiff now does not agree to the total settlement amount with a new allocation, the entire settlement will fail. However, the fact, if true, that the improper allocation persuaded plaintiff to accept the total settlement is not evidence that the amount of the settlement was not within the reasonable range of the settling tortfeasor's proportional share of comparative liability.

## 2. *Denial of Discovery*

■ Petitioner contends the settlement should be set aside because petitioner was denied discovery with respect to the financial condition of developers. In addressing this issue, the special master reasoned that a " 'disproportionately low' " settlement is a threshold requirement for such discovery and, because the settlement was not " 'disproportionately low,' " the special master recommended denial of the discovery. We agree with the

---

[2]Apparently plaintiff is referring to counsel's statement in argument that he would not have entered into the agreement without the favorable allocation.

special master's view of the relevance of the financial resources of settling defendants and, thus, find no abuse of discretion in the denial of discovery in this case. (*Peter Culley & Associates* v. *Superior Court, supra,* 10 Cal.App.4th at p. 1498.)

### 3. *Allocation of the Settlement*

The crux of the good faith dispute in the instant case lies in the fact that petitioner is not potentially liable for the entire damage suffered by plaintiff. This is due to the fact that, as the settlement order recognizes, "[t]he potential damages in this matter are divisible into two general categories: 'soils and foundation issues' and 'non-soils' issues." Petitioner, as the grading subcontractor, has no potential liability for any damages except those in the "soils and foundation" category. Developers have potential liability as to all damages.

Where there are multiple defendants, each having potential liability for different areas of damage, an allocation of the settlement amount must be made. (See *Regan Roofing Co.* v. *Superior Court* (1994) 21 Cal.App.4th 1685 [27 Cal.Rptr.2d 62]; *Erreca's, supra,* 19 Cal.App.4th 1475; *Alcal Roofing & Insulation* v. *Superior Court* (1992) 8 Cal.App.4th 1121 [10 Cal.Rptr.2d 844].) Failure to do so may preclude a "good faith" determination because there is no way to determine the appropriate setoff pursuant to section 877 against the nonsettling defendant. (*Alcal, supra,* at pp. 1124-1125; Flahaven et al., Cal. Practice Guide: Personal Injury 1 (The Rutter Group 1991) ¶ 4:185.8.) It is the burden of the settling parties to explain to the court and to all other parties the evidentiary basis for any allocations and valuations made sufficient to demonstrate that a reasonable allocation was made. (*Erreca's, supra,* at pp. 1495-1496.)

The allocation at issue here involves the cash portion of $75,000 of the settlement proceeds allocated to repair liability. According to the settlement order, the settling parties initially allocated *all* of this amount to claims for which the petitioner was not liable, thus leaving petitioner "with credits for expert fees/costs and assigned indemnity rights only. . . ."[3] The special master did not accept this allocation, noting that the evidence available at the time of the good faith motion showed that the " 'soils and foundation' " claims for which petitioner could be potentially liable constituted approximately 55.1 percent to 61.1 percent of the total cost of repair. Thus, it would

---

[3]According to the settlement order: "The settlement proceeds were allocated by the settling parties as follows: 1) $75,000 to developer-only repair liability; 2) $15,000 to expert fees and costs; 3) $20,000 to contractual attorneys fees claims (HRW [general contractor] only); and 4) $5,000 to assigned indemnity rights."

appear that the allocation to " 'soils and foundation' " should have been at least 55 percent of $75,000 or $41,250.

However, the special master concluded that an allocation of approximately $15,000 would be appropriate.[4] The special master's reasoning in making this determination is faulty. The special master explained that, in his view, petitioner would not be liable for the portion of the "soils and foundation" damage related to design. Such a finding would be relevant to the liability of petitioner to the plaintiff. It is not relevant to the allocation issue.

The special master in this case was making very much the same mistake as did the special master in *Erreca's*. There the parties allocated $1.5 million of the settlement payment to soils issues and the special master concluded this allocation was supported by the evidence and, thus, was within the range of a good faith apportionment. However, "[u]pon this amount, the special master attempted to impose a comparative fault evaluation to reduce the allocation to soils insofar as the credit was concerned, based upon his opinion of the ultimate comparative liability as to soils. The trial court accepted this recommendation in its order." (*Erreca's, supra,* 19 Cal.App.4th at p. 1501.) The appellate court decided that this was impermissible, explaining it was contrary to language in *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, 604 [146 Cal.Rptr. 182, 578 P.2d 899] "where the Supreme Court discussed the public policy of section 877 in favor of settlement in the context of comparative equitable indemnity. The Supreme Court stated, 'Moreover, to preserve the incentive to settle which section 877 provides to injured plaintiffs, we conclude that a plaintiff's recovery from nonsettling tortfeasors should be diminished only by the amount that the plaintiff has actually recovered in a good faith settlement, *rather than by an amount measured by the settling tortfeasor's proportionate responsibility for the injury.* [Citation.]' " (*Erreca's, supra,* at p. 1501, original italics.) Thus, concluded the *Erreca's* court, ". . . the $1.5 million soils allocation must be included as a whole in the amount of credit to be accorded nonsettling defendants against any future judgment." (*Id.* at p. 1502.)

Plaintiff contends the special master, in segregating out a portion of the settlement caused by defective design, was simply identifying a third category of defect and allocating a portion of the settlement to that third category. However, the parties constructed their settlement in terms of "soils

---

[4]The $15,000 allocation recommended by the special master was ultimately accepted by plaintiff and developer as part of the settlement agreement. According to plaintiff (and not contested by petitioner), petitioner may receive a potential setoff of $40,000 pursuant to section 877: $15,000 allocated to repairs caused by petitioner's work on the project, $10,000 in assignment of equitable indemnity rights, and $15,000 allocated to expert costs. Only the $15,000 relating to repairs is at issue in this petition.

and foundations damages" and "non-soils damages." This does not leave room for a third category. "Design damages" must be encompassed within one or the other of the two defect categories in this settlement allocation.

Plaintiff's contention regarding the identification of a third category reveals a further misunderstanding of the relation of allocation to credit, which misunderstanding appears to be shared by the special master. If "design" damage was a separate category from either "soils and foundation" and "non-soils", the amount of the "design" damage should not constitute the settlement credit but should have been subtracted from the settlement credit. Developers are potentially liable for *all* the "soils and foundation" damage, not just for the amount caused by a defective design. Therefore, petitioner is entitled to a setoff of the entire amount of the settlement constituting the "soils and foundation" portion of the settlement, not just the amount attributable to design-related claims. The allocation should have reflected that fact. It should have been within the range of 55.1 percent and 61.1 percent.

The special master also reduced the allocation, from the range he had found was supported by the evidence, on the ground that plaintiff was unlikely to obtain recovery for "non-soils" damage from anyone except developers because the general contractor was out of business and was now a suspended corporation. This is also an improper factor in determining the allocation between categories of defect since it is irrelevant to the determination of the proportion of damages due to one of two defect categories. Plaintiff attempts to support this factor by noting that the *Erreca's* court, in its preface to discussing the amount of credit to nonsettling defendants, recognized as a relevant public policy " 'the maximization of recovery to the plaintiff for the amount of . . . injury to the extent that negligence or fault of others has contributed to it.' " (*Erreca's, supra,* 19 Cal.App.4th at p. 1500.) That policy is not served by reducing the credit by factors which have nothing to do with the extent to which one category of defect contributed to total damages. Such an irrelevant factor is plaintiff's potential difficulty of recovering from a defendant responsible to plaintiff for a different defect from that for which the nonsettling defendant is potentially liable. That should not have been considered by the special master in determining whether the settlement was in good faith as to petitioner.

At oral argument the settling parties, citing factors which are relevant to determining whether the settling party has paid an amount within its proportionate share of liability, i.e., is within the "ballpark," contended that the court did not abuse its discretion in approving the allocation. This reveals a misunderstanding of the allocation purpose, which is to determine the

section 877 credit. This is a matter solely of a numerical evaluation since section 877, subdivision (a), provides that the settlement shall reduce the claims against the nonsettling defendants "in the amount stipulated by the release, the dismissal or the covenant, *or in the amount of the consideration paid for it whichever is the greater.*" The parameters of the "ballpark" for the purpose of allocating the settlement proceeds between discrete claims are limited by evidence of the relation of the claims to the whole of the settlement amount. In this case, the special master found the "soils and foundation" claims constituted approximately 55.1 percent to 61.1 percent of the total cost of repairs. This is the "ballpark" for purposes of allocation. The settling parties do not contend that these figures are not supported by the evidence. Therefore, the allocation must come within these figures. The reduction of the allocation because of factors which are not relevant to determining where, within these figures, the valuation lies is not permissible and results in an allocation that is not in good faith.

## Conclusion

We conclude that the trial court was not justified in approving the settlement insofar as it undervalued the allocation of settlement proceeds to the "soils and foundation" category. If the settling parties agree to a reallocation of the settlement proceeds, the good faith determination as to the total settlement amount need not be set aside. If, however, plaintiff does not agree to accept the settlement with a lower allocation to "soils and foundation," no reallocation need occur and the good faith determination should be vacated in its entirety.

## Disposition

The petition is granted with directions to the trial court to vacate its order approving the good faith settlement unless the settling parties agree to a reallocation of the settlement proceeds in accordance with the views set forth in this opinion.

Poché, J., and Hanlon, J., concurred.