**Jeffrey Jay RUTGARD, Plaintiff,**

v.

**Richard HAYNES, Defendant.**

**No. Civ. 98–0524–TW(JFS).**

United States District Court,
S.D. California.

May 21, 1999.

Stomp attached as Exhibit "A" to its complaint a copy of the '446 Patent, complete with the date of issuance.

**ORDER GRANTING DEFENDANT'S MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT [35–1]**

STIVEN, United States Magistrate Judge.

## I.

## INTRODUCTION

Defendant's Motion for Determination of Good Faith Settlement in the above-referenced case was heard before Magistrate Judge Stiven in Courtroom E on April 15, 1999. Attorneys Mike Leone and Reg Vitek appeared on behalf of Defendant. Attorney William Cohan appeared on behalf of Plaintiff. Having read the written submissions of the parties, heard argument of counsel, and being fully advised, the Court **FINDS** and **ORDERS** as follows:

## II.

## BACKGROUND

In May 1992, the Attorney General for the State of California instituted an administrative proceeding against Plaintiff, seeking to revoke Plaintiff's medical license. Plaintiff retained attorneys Sotorrio, Stein, and Defendant to defend him on charges before the Board of Medical Quality Assurance (BMQA). In September 1992, before the conclusion of the administrative proceedings, Plaintiff filed suit against several of his former employees, alleging these employees had engaged in conduct resulting in antitrust violations (hereinafter referred to as the "antitrust" case). This suit was dismissed with prejudice in August 1993, after the trial court found that Plaintiff's second amended complaint failed to state a claim on which relief could be granted.

In February of 1994, Plaintiff's former employees (the defendants in the antitrust action) filed suit against Plaintiff and his attorneys, Haynes (the defendant in this case), as well as Stein and Sotorrio, for malicious prosecution. Defendant Haynes settled with the malicious prosecution plaintiffs on March 9, 1998[1], paying each

William Cohan, for Plaintiff.

Reg Vitek, Michael Leone, San Diego, CA, for Defendant.

---

1. Actually, three of the plaintiffs accepted Haynes' settlement offer on March 9, 1998;

plaintiff $83,333, for a total settlement amount of $416,665. Sotorrio also settled with all plaintiffs at the second settlement conference for a total settlement of $200,-000. Stein did not participate in this settlement conference because he claimed that his insurance policy limits were exhausted and he lacked any other assets with which to contribute to a settlement.[2]

Several months later, Plaintiff settled with the malicious prosecution plaintiffs whereby four of the plaintiffs received $350,000 each, and the remaining plaintiff received $300,000. This resulted in a total settlement paid by Plaintiff in the amount of $1,700,000.[3] The aggregate settlement amount received by the malicious prosecution plaintiffs amounted to $2,316,665, of which Defendant Haynes paid approximately 18%, Sotorrio paid approximately 8%, and the Plaintiff in this case, Rutgard, paid the remaining 74%.

While the malicious prosecution case was pending, Rutgard was indicted on multiple counts of fraud by the United States Government. Defendant Haynes represented Plaintiff in that matter, along with co-counsel Juanita Brooks from McKenna & Cuneo. On March 15, 1995, after a lengthy trial, the jury found Rutgard guilty on all counts.

Plaintiff has now filed suit against Defendant Haynes alleging various causes of action, including breach of contract, professional negligence, fraud and deceit (non-disclosure of known facts; negligent misrepresentation), ineffective assistance of counsel, and breach of fiduciary duty. Among the damages Plaintiff is attempting to recover includes the amount of settle-

ment Plaintiff paid, and the attorney's fees generated, in his defense of the malicious prosecution action.

Defendant filed the present motion before this Court on February 22, 1999. Defendant moves this Court to find that Defendant entered into the settlement with the malicious prosecution plaintiffs in good faith. In support of the motion, Defendant alleges that his involvement in bringing the antitrust suit was minimal, and that he was named as a defendant in the malicious prosecution case solely because his name appeared on the pleadings. Defendant alleges that Attorney Stein was primarily responsible for filing and continuing prosecution of the antitrust suit, and that if any of the attorneys should have made a large contribution to the settlement with the malicious prosecution plaintiffs, it should have been Stein. Defendant also asserts that Plaintiff herein was significantly responsible for the decision to file and prosecute the underlying antitrust claim.

In opposition to this motion, Plaintiff alleges that both Defendant and Attorney Stein breached their professional duty of care to Plaintiff by filing, and encouraging Plaintiff to pursue, the antitrust action against his former employees. Plaintiff asserts that at the very least, Defendant had a duty, as co-counsel with Stein, to advise against filing the antitrust suit, or otherwise prevent such a breach. Plaintiff also alleges that Defendant's involvement in the case was not as limited as Defendant asserts, and that during that case, Defendant withheld evidence and information from both the malicious prosecution plaintiffs and Plaintiff Rutgard to hide his involvement in the antitrust case.[4] Plain-

the remaining two plaintiffs accepted the offer two days later.

2. To the best of this Court's knowledge, the malicious prosecution plaintiffs dismissed the complaint against Stein without the payment of any settlement.

3. It appears to the Court that Plaintiff's insurance carrier paid this settlement amount.

4. Among the evidence Rutgard contends was fraudulently withheld by Defendant includes

Defendant's 1992 and 1993 calendars and "day-books", documents which illustrate that Haynes received 55% of the retainer fee paid to Stein, and that Haynes never revealed to Plaintiff that a potential conflict of interest existed due to the fact that Haynes and Rutgard were co-defendants in the malicious prosecution case, but that Haynes nevertheless represented Rutgard during his criminal trial. This issue is discussed further in Sections III.B.1 and III.B.5, infra.

tiff alleges that in light of Defendant's "fraudulent misconduct", Defendant's settlement with the malicious prosecution plaintiffs could not have been executed in good faith. Plaintiff alleges further that Defendant's settlement was materially disproportionate to his real potential liability to the malicious prosecution plaintiffs, and thus was not in good faith.

## III.

## DISCUSSION

### A. Standard of Law for Determination of Good Faith Settlement

Section 877 of the California Code of Civil Procedure provides, in pertinent part:

Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given *in good faith* before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect:

(a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it, whichever is greater.

(b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties.

Cal.Civ.Proc.Code § 877 (emphasis added). Section 877 is based on the Uniform Contribution Among Tortfeasors Act of 1955. *Federal Savings and Loan Insurance Corp. v. Butler*, 904 F.2d 505, 511 (9th Cir.1990).

The procedural counterpart to § 877 is found in California Civil Procedure Code § 877.6, which outlines the process by which a party may move for a hearing and a determination of good faith settlement before the trial judge. Cal.Civ.Proc.Code. § 877.6.

### 1. *Federal Court Jurisdiction*

■ Cal.Code Civ.Pro. § 877 applies to federal court actions, and authorizes a federal court to determine if a prior settlement agreement from a state court case was entered into in good faith. *See Slottow v. American Casualty Co. of Reading, Pennsylvania,* 10 F.3d 1355 (9th Cir.1993) (en banc); *Spectra–Physics, Inc. v. Chase Manhattan Bank, et al,* 654 F.Supp. 311, 313 (N.D.Cal.1987). In *Butler,* the court noted that while section 877.6 *procedures* do not govern a federal action, even though the settlement agreement provides that California law applies, a federal court has the discretion to conduct a hearing pursuant to that section should it find it useful to do so. *Butler,* 904 F.2d at 511. Additionally, the "substantive provisions of California law . . . are applicable (in this case section 877)" when determining whether a party has entered into a settlement governed by California law in good faith. *Id.* Accordingly, this Court finds that it has jurisdiction to review the settlement entered into by Defendant Haynes and the malicious prosecution plaintiffs to determine whether Defendant entered into that settlement in good faith.[5]

### 2. *California Law Governing Good Faith Settlement*[6]

■ In *Tech–Bilt, Inc. v. Woodward–Clyde & Associates,* 38 Cal.3d 488, 499, 213

---

**5.** Further, this Court finds that this motion is non-dispositive of the case. Even though this Court finds that Defendant did enter the settlement in good faith, this alone does not dispose of any or all of Plaintiff's claims, and accordingly, this Magistrate Judge has jurisdiction to make a final determination on this motion. However, to the extent that this ruling is to be more properly construed as a dispositive ruling, this Order will be deemed a

Report and Recommendation to the District Court for review. *See generally* 28 U.S.C. § 636(b), (c).

**6.** The Court notes that the settlement agreements at issue do not contain an express choice of law provision, but do refer to California Civil Procedure Code section 877.6. Neither party has contested that California law applies to this determination.

Cal.Rptr. 256, 698 P.2d 159 (1985), the California Supreme Court stated that an appropriate definition of "good faith" "would enable the trial court to inquire, among other things, whether the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries." However, bad faith is not necessarily "established by a showing that a settling defendant paid less than his theoretical proportionate or fair share." *Id.* (citation omitted). "Such a rule would unduly discourage settlements" as it would not take into account various unknown and speculative factors such as the amount of damages, probability of legal liability, the solvency of the defendant, and the risk of going through trial. *Id.* The California Supreme Court concluded that:

> [T]he intent and policies underlying section 877.6 require that a number of factors be taken into account including a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, the allocation of settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial. Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants.... Finally, practical considerations obviously require that the evaluation be made on the basis of information available at the time of settlement. "[A] defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of settlement, would estimate the settling defendant's liability to be." ... The party asserting the lack of good faith, who has the burden of proof on that issue ... should be permitted to demonstrate, if he can, that the settlement is so far "out of the ballpark" in relation to these factors as to be inconsistent with the equitable objectives of the statute. Such a demonstration

would establish that the proposed settlement was not a "settlement made in good faith" within the terms of section 877.6.

*Tech–Bilt, Inc. v. Woodward–Clyde & Associates*, 38 Cal.3d at 499–500, 213 Cal. Rptr. 256, 698 P.2d 159 (citations omitted).

### B. Findings of Fact Resulting in Good Faith Settlement

█ A finding of good faith under § 877 is a finding of fact. *Yanez v. United States*, 989 F.2d 323, 327 (9th Cir.1993). This Court makes the following findings of fact and thereupon determines that under the standard created in *Tech–Bilt*, Defendant Haynes entered the settlement agreement with the malicious prosecution plaintiffs in good faith.

#### 1. Rough approximation of the malicious prosecution plaintiffs' total recovery and the settlor's proportionate liability.

##### A. Evidence of Defendant Haynes' liability.

Haynes argues that his role in the antitrust trust suit, which led to the filing of the malicious prosecution action, was limited in scope. Haynes refers to the retainer agreement under which his "involvement in the referenced matters within the fee cap, shall be limited to the following: [¶] Deposing Sanford Feldman ... [¶] Deposing George Butera ... [¶] Consult with and advise the other members of the legal team—headed by Mitchell J. Stein—regarding the trial of the federal civil matter, and appearing at such trial to the extent and to the frequency that Mr. Haynes deems appropriate, within his sole and absolute discretion; ..." (Retainer Agreement between Rutgard, Stein, Haynes, Sotorrio, dated Nov. 1, 1992; Points and Authorities in Support of Motion for Determination of Good Faith Settlement, Ex. H.)

Further, Haynes argues that he told Rutgard that Rutgard "would be better served, in terms of expense, by having

Mitch [Stein] and Rene [Sotorrio] or someone familiar with the facts made the basis of your problems and the administrative law and procedure and civil law of California handles these matters." (*Id.* at Ex. G.) Also, Haynes argues that Stein drafted each version of the antitrust complaint, all oppositions to the motions to dismiss, and drafted the majority of the correspondence advising Rutgard of the status and chances of successfully prosecuting the antitrust action. (*Id.* at Exs. R–S.)

During the time period the antitrust case was prosecuted, the evidence submitted to this Court indicates that from July to December 1992, Haynes billed Rutgard for approximately 37.5 hours of his time for work on Rutgard's cases. (*Id.* at Ex. F.) For time spent by Haynes in 1993, Plaintiff asserts that Defendant had telephone conversations with Stein on May 4 (30 minutes), May 12 (20 minutes), and May 14 (20 minutes). Haynes also allegedly traveled to San Diego on May 11, met with Rutgard on May 12, and had a 39 minute telephone conference with Rutgard on May 18. (Plaintiff's Opposition to Motion for Determination of Good Faith Settlement, pp. 25–26.) Plaintiff's second amended antitrust complaint was dismissed with prejudice in August, 1993.

Plaintiff alleges that Haynes was much more involved in the antitrust case than Defendant admits. Plaintiff argues that even if Defendant's involvement was more limited in scope than the role played by Attorney Stein, Plaintiff regarded Defendant as the lead attorney who had the duty to prevent any wrongful action by Rutgard's legal team. Plaintiff indicates to this Court that had Haynes told him to stop the antitrust case, he would have followed Haynes' advice. Further, Plaintiff alleges that the 1992–1993 "day-books" recently "found" and produced by Defendant herein illustrates that Defendant's involvement in the antitrust action was much greater than Defendant admitted during

discovery in the malicious prosecution case. For example, the summaries of the "day-books" submitted by Plaintiff indicate that Defendant may also have had telephone conferences with Rutgard on May 14 (36 minutes), May 26 (10 minutes), and May 27 (5 minutes), and with Stein on May 18 (5 minutes) and May 26 (1 hour).

The information contained in the newly produced "day-books" are discussed in greater detail below in Section III.B.5. However, after reviewing all of the evidence submitted, this Court finds that, even including the additional information contained in the "day-books", the evidence does not support Plaintiff's argument that Defendant was the "lead figure" in the prosecution of the antitrust case. The documents submitted show that Defendant spent less than 50 total hours on Rutgard's cases from July 1992 through May 1993, as compared to the approximate 1200 hours expended by Stein. Looking at the length of the conversations Haynes had with Stein, this Court does not find it plausible that Haynes had an opportunity to fully review the documents generated for the antitrust case, nor could Stein have assumed that Haynes was acting with such knowledge during their conversations. In light of the evidence, while this Court finds that Defendant did have some culpability, and while it is possible that the other attorneys, as well as Plaintiff, looked to Haynes for some guidance, this Court finds that the evidence does not support a finding that Haynes played an integral or primary role in prosecuting the antitrust case.

*B. An approximation of the malicious prosecution plaintiffs' total recovery.*

The aggregate settlement amount paid to the five malicious prosecution plaintiffs was $2,316,665. Of this, Defendant paid $83,300 to each plaintiff. Rutgard paid each plaintiff $350,000, with the exception of one plaintiff who received $300,000. Thus, four of the plaintiffs received approximately $473,300, and one plaintiff received $423,300.[7] However, Defendant as-

7. The Court notes that Mr. Sotorrio paid $200,000 in settlement, paying $40,000 to

each of the plaintiffs.

serts that the overall settlement payment received by each plaintiff was beyond a reasonable amount, and argues that in fact, Defendant's payment of $83,300 to each plaintiff would have been a sufficient settlement payment to completely resolve the plaintiffs' claims and alleged damages.

Notwithstanding the fact that the plaintiffs in fact recovered actual settlement amounts of $473,300 and $423,300, the focus in making a good faith settlement determination should consider that the settlement "must not be grossly disproportionate to what a reasonable person, *at the time of the settlement,* would *estimate* the settling defendant's liability to be." *Tech–Bilt,* 38 Cal.3d at 499, 213 Cal.Rptr. 256, 698 P.2d 159 (*citing Torres v. Union Pacific R.R. Co.,* 157 Cal. App.3d 499, 509, 203 Cal.Rptr. 825 (1984)) (emphasis added). Thus, this Court should consider what Haynes' potential liability was at the time of the Haynes settlement, and whether his settlement payment was proportionate to his potential liability at that time, not necessarily whether Haynes' settlement payment was proportionate to the amount the plaintiffs actually recovered. This Court finds this inquiry particularly significant in light of the fact that at the time of the settlement, it did not appear that the plaintiffs would be able to potentially recover a large damage award from any of the defendants, as there was little evidence the plaintiffs had suffered cognizable damages.

Defendant argues that the malicious prosecution plaintiffs would not be able to illustrate the existence of any significant damages. In support of this allegation, Defendant submits the declaration of Mr. Don Warren, counsel of record for three of the malicious prosecution plaintiffs. Of primary interest to this Court's inquiry is Mr. Warren's statement that relatively little evidence existed of special damages incurred by the plaintiffs as a result of the antitrust action, and that the majority of the plaintiffs' damages were in the form of general damages resulting from emotional distress. (Declaration of Mr. Warren, p.

2.) In defense of the antitrust action, the defendants (the malicious prosecution plaintiffs) were defended by the State of California (presumably because the suit was the result of their cooperation with the authorities investigating Dr. Rutgard), so they did not incur attorney's fees. Further, there appears to be no evidence of any other kind of special damages.

The only damages claimed by the malicious prosecution plaintiffs were damages due to emotional distress, evidence of which was not documented by any of the plaintiffs until one year after the suit had been filed. There has been no evidence submitted to this Court to demonstrate that any of the malicious prosecution plaintiffs suffered any severe or extreme emotional distress. This Court recognizes that it is always easier to analyze any litigation easier in hindsight, but as part of this inquiry, this Court must consider the reasonableness of the settlement payment received by the malicious prosecution plaintiffs at the time of the settlement. In light of the fact that little evidence existed to support the plaintiffs' claims for damages, it is difficult to conclude that a payment of $83,333 to each plaintiff by Haynes was grossly disproportionate to what might have been reasonably assessed as his share of the plaintiffs' potential recovery at the time of the settlement.

As stated above, this Court notes the actual total settlement amount, and the fact that Haynes' payment was 18% of the total. It is appropriate for this Court to consider these facts in determining whether Defendant paid a proportional amount of the settlement in relation to his level of potential liability. As discussed below, this Court finds that Defendant's payment was proportional even if the actual total settlement amount of $2.3 million received by the malicious prosecution plaintiffs was found to be a reasonable assessment of their total potential recovery. However, this Court finds that Defendant's payment was even more proportional in light of the limited evidence existing at the time of the settlement, that the malicious prosecution plaintiffs suffered cognizable damages.

### C. Haynes' settlement payment in light of his proportionate liability.

In Section III.B.1.A, this Court found that the evidence suggests that Defendant did not play a primary or integral role in prosecuting the antitrust action. Defendant payed $416,000, approximately 18% of the total settlement received by the malicious prosecution plaintiffs. As discussed in Section III.B.1.B, this Court is not convinced that it should assume the "total recovery" actually received in settlement by the malicious prosecution plaintiffs should equal a reasonable approximation of their potential "total recovery" which might have been assessed at the time of Haynes' settlement.

If this Court were to find that the reasonable settlement value of the malicious prosecution case was less than what the malicious prosecution plaintiffs actually received, Defendant's settlement payment would increase in proportion to the rest of the overall settlement. However, this Court does not find it necessary to state what a more appropriate settlement would be. This Court finds that even if the total amount actually received by the malicious prosecution plaintiffs represents an appropriate settlement amount, Defendant's settlement payment of $416,000, or 18% of the overall settlement, is reasonably proportional to the liability for which Defendant would likely have been liable at the time of the settlement.

### 2. The allocation of settlement proceeds among the plaintiffs.

Defendant's allocation of settlement proceeds among the plaintiffs were equal amounts to all. This factor does not provide the Court with affirmative evidence that Defendant's settlement was in good faith. However, the fact that none of the plaintiffs were favored over any others also indicates that the existence of a "deal" between Defendant and any of the plaintiffs was unlikely.

### 3. Settlor should pay less in settlement than he would if he were found liable at trial.

As discussed above, this Court finds that Defendant Haynes paid an amount reasonably related to his proportional share of the damages plaintiffs might have been able to prove at trial. However, even if it could be shown that Defendant's settlement was less than the amount of a possible judgment against him at trial, this settlement amount is still appropriate as plaintiffs avoided the risks and costs of going to trial, where their proof against Defendant might have failed, or the amount of damages awarded might have been markedly less.

### 4. Defendant Haynes' financial condition at the time of settlement.

This Court is unaware of any financial hardship or risk facing Defendant Haynes at the time of this settlement. The Court believes that Defendant Haynes' settlement was paid by his insurance carrier, and is unaware whether this settlement amount was the maximum his insurance carrier would pay. Nevertheless, Defendant paid a total settlement amount of $416,000. This Court finds that the evidence does not indicate that Defendant should have paid more or less due to his financial condition, and therefor finds that Defendant's ability to pay more or less does not indicate the existence or absence of good faith in entering the settlement.

### 5. The existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants.

Plaintiff argues that this Court cannot find that Defendant entered into settlement with the malicious prosecution plaintiffs in good faith because Defendant fraudulently withheld evidence from the plaintiffs and Rutgard during discovery in the malicious prosecution action.[8] Plaintiff

---

**8.** Plaintiff also argues that Defendant improperly delayed production of certain documents in discovery of this lawsuit.

specifically refers to Defendant's failure to produce any of his calendars to the malicious prosecution plaintiffs, and his failure to produce the letter between himself and Stein which indicates that the two attorneys were to divide an initial retainer payment by Rutgard 55–45% respectively. Plaintiff also refers to some of Defendant's deposition testimony during the malicious prosecution case as illustrations that Defendant may not have been completely forthright in his testimony regarding his recollection of his role in the antitrust case and his relationship with Stein.[9]

This Court is compelled to note that there is clear cause for concern regarding the development of the evidence through discovery in this case and in the underlying malicious prosecution case. Of primacy concern to this Court is that none of Defendant's calendars (including the "daybooks" referenced in notes 4 and 9) were produced to the malicious prosecution plaintiffs, although it seems more than likely that Defendant knew of the existence of these calendars.[10] Further, this Court must question Defendant's recollection during deposition testimony when, for example, Defendant was unable to recall the meaning of the numbers "55/45, 320, 144 and 176," whether he had a conversation with Mr. Bennett, Rutgard's insurance carrier, and his knowledge regarding the issue of Rutgard's indemnification of both him and Stein.

However, this Court must also comment that Plaintiff has provided no direct evidence to contradict Defendant's assertion that the recently produced calendars had

been misplaced in his office, nor is this Court prepared to make any sort of finding that Defendant perjured himself during any of his depositions. This Court finds that in light of the evidence before it, while some of the issues raised give the Court reason to pause, there is no evidence that in fact Defendant fraudulently withheld material information during the malicious prosecution case.

The existence of fraud or collusion aimed to injure the interests of other defendants is only one of the factors the Court considers in determining whether the settlement is in good faith. As stated above, this Court does not find that Defendant engaged in fraudulent conduct. Moreover, even *if* all the information now before the Court had been produced to the malicious prosecution plaintiffs, this evidence is *not* nearly so significant as to change Defendant's overall potential liability, or to cast his role in the antitrust case in a substantially different light. Plaintiff has submitted to this Court the evidence he asserts that, had this information been available to the malicious prosecution plaintiffs, it would show that Defendant's liability was significantly greater than what they may have thought at the time of settlement.[11] Plaintiff argues that had this evidence not been "concealed", Defendant would have had to pay the malicious prosecution plaintiffs a greater settlement amount, and Rutgard would have paid the plaintiffs a lesser amount. However, the Court has reviewed this evidence and finds that while it may indicate that Defendant

---

9. For example, in deposition, Haynes denied conversations with Stein or Rutgard about obtaining releases or indemnity from Rutgard. The "day-books" suggest that one or two such conversations may have occurred. Haynes also testified that he did not recall reviewing that antitrust complaint before it was filed. The "day-books" indicate that he read ¶¶ 40–44 of the complaint and discussed it with Stein.

10. Defendant asserts that the calendars and day-books were misplaced or misfiled, and were only recently found.

11. Plaintiff has reviewed numerous pages from Defendant's calendars in connection with the pending motion. At the Court's request, Plaintiff's counsel, in a post-hearing submittal, highlighted all entries in those records which he considered to be material to his claims of fraud in the discovery process against Defendant. As discussed, this Court has reviewed all of the submissions by both parties, and has determined that this new information does not significantly alter Defendant's potential liability to the malicious prosecution plaintiffs.

played a somewhat greater role in the antitrust action than the discovery in the malicious prosecution action showed, this Court finds that this additional evidence is not so great as to illustrate that Defendant played a "primary" or "lead" role in the antitrust case, which would have exposed him to significantly greater liability in the underlying case.

6. *Was Defendant Haynes' settlement grossly disproportionate to what a reasonable person at the time of settlement would estimate his liability to be?*

This Court finds that Defendant's payment of $416,000, constituting approximately 18% of the total settlement actually paid to the malicious prosecution plaintiffs, was not grossly disproportionate to what a reasonable person at the time of settlement would estimate Defendant's liability to be. Plaintiff has not submitted evidence that Defendant's potential liability was significantly greater than the proportional amount he paid. Even if this Court assumes that Defendant failed to produce some of the evidence sought by the malicious prosecution plaintiffs in good faith, this evidence now before this Court does not illustrate that Defendant's liability was significantly greater than the proportional amount Defendant paid.

7. *Was Haynes' settlement so far "out of the ballpark" in as to be inconsistent with the equitable objectives of the statute?*

In light of all the evidence reviewed by this Court, and the factual findings this Court has stated above, this Court finds that Defendant Haynes' settlement was not so far "out of the ballpark" in relation to his liability, that this Court could find that Defendant entered the settlement with the malicious prosecution in bad faith. Accordingly, in light of the above findings of fact, this Court concludes that Defendant Haynes' settlement with the malicious prosecution plaintiffs was conducted in good faith.

## IV.

## CONCLUSION

Plaintiff bears the burden of proof in showing a lack of good faith in connection with Haynes' prior settlement. This Court finds that Plaintiff has failed to show that Defendant did not enter into settlement with the malicious prosecution plaintiffs in good faith. Defendant's settlement was not "grossly disproportionate" to his actual share of the potential liability. Defendant's Motion for a Determination of Good Faith Settlement is hereby **GRANTED.**[12]

**IT IS SO ORDERED.**

12. As noted above, if the District Judge considers this ruling to be "dispositive" of any or all of Plaintiff's claims in this action, Plaintiff may raise objections to this Order in connection with his opposition to Defendant's motions for summary adjudication pending before District Judge Whelan.